**IN THE COURT OF APPEALS OF IOWA**

No. 17-0494
Filed December 20, 2017

**THERESA LYNNE BRUSKE,**
        Plaintiff-Appellee,

**vs.**

**RANDYCURTIS CLEO BRUSKE,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Joel D. Novak, Judge.

        Randy Bruske appeals the entry of a domestic abuse protective order.

**AFFIRMED.**

        Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellant.

        Phillip F. Van Liew of Babich Goldman P.C., Des Moines, for appellee.

        Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**MULLINS, Judge.**

Randycurtis Bruske (Randy) appeals the entry of a domestic abuse protective order pursuant to Iowa Code section 236.5(1)(b) (2017). He contends the district court's conclusion that he committed domestic abuse assault against his wife, Theresa Bruske, is not supported by substantial evidence. He specifically contends "[t]here is insufficient evidence to prove that [he] specifically intended to assault Theresa or that she was placed in fear by any of his actions as she alleged." Theresa requests an award of appellate attorney fees.

## I.    Background Facts and Proceedings

We make the following findings of fact based upon the evidence which we find credible. The parties have been married for seven years. Their marriage has produced two children. On, January 31, 2017, Theresa filed a petition for dissolution of marriage. On February 1, Theresa called Randy while he was at work and informed him of the pending dissolution action. That evening, Randy was visibly upset when he returned home from work. Randy went out while Theresa stayed home with the children. Randy returned home at approximately 10:45 p.m. after being gone for roughly four hours. He went straight to bed. At approximately 11:45 p.m., as Theresa was washing dishes, Randy, who was heavily intoxicated,[1] came out of his room, approached Theresa, pulled down her pants, and tried to initiate sexual intercourse. Theresa initially resisted but reluctantly consented to the contact and requested that the encounter take place in the bedroom so the children would not be awoken.

---

[1] Randy conceded at trial that, after finding out about the divorce, he did "indulge a little extra" in his alcohol consumption on the evening in question.

The ensuing intercourse was aggressive on the part of Randy and he continued such aggressiveness, directing Theresa to "Take it!" several times, despite being advised by Theresa that he was hurting her and she wanted him to stop, as well as her unsuccessful effort to force Randy off of her. Specifically, during the encounter, Randy forced penetration more than once, pulled her hair, slammed her head into the mattress several times, and dug his fingers into Theresa's neck. Theresa was finally able to end the encounter.

Theresa then went to her daughter's room to sleep. The next morning at approximately 4:30 a.m., Theresa awoke to Randy ripping her pants off and forcing penetration, all while the parties' daughter was asleep in the same room, approximately eight feet away. Theresa declined consent to the encounter, but ultimately relented so the child would not be awoken. Randy "got up and stormed out of the room" a few minutes later. Theresa testified she feared for her safety during both of these encounters. Randy testified at trial that he believed both encounters were completely consensual. He conceded, however, that Theresa advised him on February 2 that his aggressive actions hurt her—he apologized for his conduct. Later that morning, Randy removed all the money from and closed the parties' joint checking accounts and cancelled their credit cards.

On February 5, the parties argued in relation to Theresa having previously hidden the magazines and ammunition for Randy's firearm. Randy left the home with his firearm and Theresa, frightened by what Randy might do with it, called her father who, in turn, called the police. Randy testified at the trial that he left the home at this time, a Sunday evening, to go to work. When the police arrived,

Theresa advised them of the argument and the events that occurred on February 1. Theresa took the kids to her parents' home, switched vehicles, and then stayed in a motel "under someone else's name."

On Tuesday, February 7, Theresa filed a petition for relief from domestic abuse in which she alleged Randy sexually abused her.[2] The district court held an ex parte hearing and entered a temporary protective order pursuant to Iowa Code section 236.4(2). Following a trial in early March, the district court announced the following on the record:

> I . . . find credible what [Theresa] has said occurred on February 1st and February [2nd]. And even – even if I think, and [Randy] testified, may have been some consent at some point in time on these occasions, but as far as I'm concerned, based upon the statements, if there was any voluntary consent to those acts . . . , that voluntary consent was withdrawn during the course of the sexual action by [Theresa] advising [Randy] he was hurting her. She wanted him to stop, and he failed to do so.
> When, in this case a woman . . . says no, it means no, even if originally, you know, she said yes. Once she says, "Stop. No. You are hurting me," that is it. There is no more consent.
> And the actions that were taken by [Randy] on those two days definitely rises to domestic abuse as the Court has read into the record . . . .

The court issued a one-year protective order. The order was subsequently amended to address possession of the marital home, physical care of the children, and visitation. This appeal followed.

## II.     Standard of Review

"District courts hear civil domestic abuse cases in equity, and we review them de novo." *In re Petition of Chapman*, 890 N.W.2d 853, 856 (Iowa 2017); *accord Wilker v. Wilker*, 630 N.W.2d 590, 594 (Iowa 2001). Under this review,

---

[2] Theresa tried to file her petition on Monday, February 6, but because a judge was not available, she was directed to return to the courthouse the following day.

"we are not bound by the trial court's conclusions of law or findings of fact, although we do give weight to factual findings, particularly when they involve the credibility of witnesses." *Chapman*, 890 N.W.2d at 856 (quoting *In re Estate of Warrington*, 686 N.W.2d 198, 202 (Iowa 2004)); *accord* Iowa R. App. P. 6.904(3)(g).

## III.    Analysis

On appeal, Randy contends the district court's conclusion that he committed domestic abuse assault is not supported by substantial evidence. He specifically contends "[t]here is insufficient evidence to prove that [he] specifically intended to assault Theresa or that she was placed in fear by any of his actions as she alleged."

To obtain a protective order under Iowa Code chapter 236, a plaintiff "must prove the allegation of domestic abuse by a preponderance of the evidence." Iowa Code § 236.4(1). "A preponderance of the evidence is the lowest degree of proof upon which issues of fact are determined . . . ." *State v. Beasley*, 50 N.W. 570, 570 (Iowa 1891). The quantity of evidence required of a party having the burden of proof in a civil action is "no more than will outweigh the evidence of the other side." *Hall v. Wright*, 156 N.W.2d 661, 667 (Iowa 1968).

"Domestic abuse" means any "assault as defined in section 708.1" where, among other circumstances, "[t]he assault is between family or household members who resided together at the time of the assault." Iowa Code § 236.2(2)(a). Assault is a general intent crime under section 708.1(1), and occurs when a person, without justification, commits "[a]ny act which is intended

to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act." *Id.* § 708.1(2)(a). Although the statute defines assault as a general intent crime, specific intent continues to be an element of the offense. *See State v. Bedard*, 668 N.W.2d 598, 600–01 (Iowa 2003). However, a factfinder is allowed to infer that an individual specifically "intends the natural and probable consequences of [their] voluntary actions." *See State v. Taylor*, 689 N.W.2d 116, 136 (Iowa 2004).

Evidence of domestic abuse assault "is substantial if reasonable minds could accept it as adequate to reach the same findings." *Bacon ex rel. Bacon v. Bacon*, 567 N.W.2d 414, 417 (Iowa 1997). Although Randy veils his real argument by contending the evidence was insufficient, we note his challenge largely relates to the district court's weighing of the evidence and credibility determinations. We note the finder of fact "is free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in its judgment such evidence should receive." *State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993). "In fact, the very function of the [factfinder] is to sort out the evidence and 'place credibility where it belongs.'" *Id.* (quoting *State v. Blair*, 347 N.W.2d 416, 420 (Iowa 1984)). The district court determined Theresa's account of the events occurring on February 1 and 2 to be credible. We give weight to that determination. *See Chapman*, 890 N.W.2d at 856.

The credible evidence reveals in the late evening hours of February 1, Theresa reluctantly consented to a sexual encounter with Randy. During the encounter, Randy forcibly penetrated her more than once, pulled her hair,

slammed her head into the mattress several times, and dug his fingers into her neck. Theresa repeatedly advised Randy he was hurting her and she wanted him to stop and unsuccessfully attempted to force him off of her. Randy continued the aggressive behavior, directing Theresa to "Take it!" several times. Randy's continued actions after his wife asked him to stop and advised she was experiencing pain amount to acts by Randy which were intended to cause pain or injury to Theresa or which were intended to result in physical contact which was offensive to Theresa. *See* Iowa Code § 708.1(2)(a); *see also Taylor*, 689 N.W.2d at 136. Randy had the ability to, and in fact did, execute the acts. *See* Iowa Code § 708.1(2)(a). We conclude substantial evidence supports the district court's conclusion that Randy committed domestic abuse assault.

## IV. Attorney Fees

Theresa requests an award of appellate attorney fees. "Like the district court, we have the authority to award attorney fees under Iowa Code section 236.5(4)." *Smith v. Janssen*, No. 16-0018, 2017 WL 1086206, at *4 (Iowa Ct. App. Mar. 22, 2017); *see also Schaffer v. Frank Moyer Constr., Inc.*, 628 N.W.2d 11, 23 (Iowa 2001) (holding that a statute allowing an award of trial attorney fees permits an award of appellate attorney fees as well). An award of appellate attorney fees is not a matter of right but rests within this court's discretion. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). In determining whether to award attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the district court's decision on appeal. *Id.* In

consideration of these factors, we award appellate attorney fees to Theresa in the amount of $1000.  Costs on appeal are assessed to Randy.

**V.** **Conclusion**

We affirm the district court's entry of the protective order.  We award appellate attorney fees to Theresa in the amount of $1000.  Costs on appeal are assessed to Randy.

**AFFIRMED.**