# IN THE SUPREME COURT OF IOWA

No. 15–0153

Filed February 24, 2017

Amended May 8, 2017

Upon the Petition of
**JUDITH ANN CHAPMAN,**

Appellee,

and Concerning
**JOHN KENDALL WILKINSON JR.,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Robert Hutchison, Judge.

A son seeks further review of a court of appeals decision finding that he perpetrated elder abuse on his mother. **AFFIRMED.**

Carmen E. Eichmann of Eichmann Law Firm, Des Moines, for appellant.

Judith A. Chapman, Grimes, pro se appellee.

**WIGGINS, Justice.**

The district court found a son committed elder abuse against his mother and entered an order against the son. The son appealed. Our court of appeals affirmed. The son sought further review. On further review, we are letting the court of appeals decision stand as the final decision that the district court advised Wilkinson of his right to counsel as required by Iowa Code section 235F.5(5). 2014 Iowa Acts ch. 1107, § 5 (codified at Iowa Code § 235F.5(5) (2015)). We are also letting the court of appeals decision stand as the final decision that under Iowa Code sections 235F.1(8) and (14) a person does not need to be a caretaker to commit elder abuse because a person standing "in a position of trust or confidence with the vulnerable elder" can perpetrate elder abuse. Additionally, we are letting the court of appeals decision stand as the final decision that sufficient evidence existed to find the mother had a life estate in the mobile home. On further review, we affirm the judgment of the district court that the mother was a vulnerable elder under section 235F.1(17).

## I. Background Facts and Proceedings.

Judith Chapman is sixty-nine years old and the mother of three adult children. After Chapman's husband passed away in 2008, she moved to Grimes and purchased a mobile home. Thereafter, she put the title of the mobile home in her son John Wilkinson Jr.'s name. When she transferred the title of the mobile home to her son, she told him, "[W]hen I'm dead, it's yours. It's your inheritance." At around the same time she put the title to the mobile home in her son's name, she transferred ownership in a duplex to her two daughters.

She continued to live in the mobile home and paid the taxes on it. At some point, one of Chapman's daughters moved into the mobile home

with her. This caused Wilkinson to ask Chapman to pay him $35,000 for him to give the title of the mobile home back to her. Chapman reiterated that the mobile home was to be Wilkinson's inheritance and that he could sell it when she died. Following that discussion, Wilkinson posted at least three eviction notices to Chapman and her daughter on the door of the mobile home.

On October 25, 2014, Wilkinson called the Polk County sheriff's office regarding his sister trespassing at the mobile home. Wilkinson showed up at the mobile home with two deputies, and after speaking with Chapman and her daughter, the deputies informed Wilkinson that it was a civil matter.

On November 4, Chapman filed a petition for relief from elder abuse under Iowa Code section 235F.2. She named Wilkinson as the defendant and alleged that the nature of the abuse was a "property dispute" and that he was "trying to take [her] home before [her] death." On the same day, the district court entered a temporary protective order and scheduled a hearing on November 13 to determine if it should enter a final protective order. On November 5, Wilkinson filed a motion for continuance because of a work obligation. The district court granted his motion.

On November 24, the matter proceeded to a final hearing on Chapman's request for an elder abuse protective order against Wilkinson. Both parties appeared pro se. At the hearing, Chapman testified that she put Wilkinson's name on the title as his inheritance, and she would retain the mobile home as her residence until she died. She further testified, "[I]t's just worrisome. I'm tired of having these eviction notices. And I'm just too old for it." Her daughter who was living in the mobile home with her also testified it was known that the

mobile home "would go to [Wilkinson] in inheritance upon [their mother's] death."

Additionally, Wilkinson testified Chapman transferred the title into his name, brought it to him, and said, "Here's the title to the trailer. If something happens to me, it's yours. That way there is no dispute who it belongs to." However, Wilkinson also stated he was the "sole proprietor owner of that property" and wanted to sell it now. He testified his attorney advised him this was an issue of "gifter's remorse." The district court asked Wilkinson the name of his attorney and if his attorney was present in court. Wilkinson stated his attorney was not present, and the court replied, "Probably would have been a good idea to have him here today."

At the conclusion of the hearing, the district court entered a final protective order against Wilkinson, finding that "[he] has financially exploited [Chapman] by failing to recognize the life estate she maintained in her mobile home at the time she gifted the remainder to him." The district court ordered Wilkinson "shall take no action to infringe upon [Chapman's] life estate in the mobile home." Wilkinson was further prohibited from exercising control over or transferring any "funds, benefits, property, resources, belongings, or assets" of Chapman's. Wilkinson was "restrained from abusing, harassing, intimidating, molesting, interfering with, or menacing the [v]ulnerable [p]etitioner, or attempting to abuse, harass, intimidate, molest, interfere with or menace the [p]etitioner." Wilkinson was also "restrained from entering or attempting to enter" the mobile home, and "restrained from exercising any powers on behalf of the [p]etitioner through a court-appointed guardian, conservator, or guardian ad litem, an attorney in fact, or another third party."

On December 8, Wilkinson orally requested an extension of time to file a motion pursuant to Iowa Rule of Civil Procedure 1.904(2) as he had recently retained counsel. The court granted the request, allowing Wilkinson until December 12 to file the motion. Wilkinson obtained counsel and filed a motion to enlarge or amend on December 12. In the motion, Wilkinson argued that (1) "the [c]ourt erred in failing to advise defendant that he was entitled to counsel and that he was entitled to a continuance to secure counsel," (2) "[p]laintiff is not a 'vulnerable elder' as defined in Chapter 235F.1(11)," (3) "[d]efendant is not a 'caretaker' as defined under Chapter 235F.1(2)," and (4) "[t]he [c]ourt erred in finding there was [a] 'life estate' in the mobile home." Chapman did not resist the motion.

On December 28, the district court denied the motion to enlarge or amend its order, granting a final elder abuse protective order against Wilkinson. The court rejected each of Wilkinson's arguments, finding the court advised Wilkinson of his right to counsel at the time he appeared before the court on November 5 to request a continuance.

Next, the court stated, "[T]here was no showing that petitioner had a mental or physical condition which rendered her incapable of defending herself from elder abuse." The court determined such a finding was unnecessary. The court further found Chapman "was unable to defend herself from respondent's financial exploitation because of her age." In reaching this conclusion, the court stated such a finding was sufficient under section 235F.1(17) to find elder abuse had occurred.

Third, the court found Wilkinson committed elder abuse by financial exploitation as an adult child "who stands in a position of trust or confidence" to Chapman under section 235F.1(14)(*a*) and not as a

"caretaker." Lastly, the court found there was sufficient evidence to establish Chapman retained a life estate in the mobile home.

Wilkinson filed a notice of appeal. We transferred the case to the court of appeals. The court of appeals found the district court advised Wilkinson of his right to counsel as required by section 235F.5(5). It also found a person does not need to be a caretaker to commit elder abuse because a person standing "in a position of trust or confidence with the vulnerable elder" can perpetrate elder abuse. Iowa Code § 235F.1(8). The Code defines a person who "stands in a position of trust or confidence" with the vulnerable elder as including an adult child. *Id.* § 235F.1(14). The court of appeals further found sufficient evidence existed to find Chapman had a life estate in the mobile home.

Finally, the court of appeals found the district court had sufficient evidence to support its finding that Chapman "was a 'vulnerable elder' under section 235F.1(17) because she was unable to protect herself from financial exploitation due to her age." Wilkinson filed and we granted his application for further review.

## II.  Standard of Review.

District courts hear civil domestic abuse cases in equity, and we review them de novo. *Wilker v. Wilker*, 630 N.W.2d 590, 594 (Iowa 2001). Because of the similar nature of our elder abuse law and domestic abuse law, we also review elder abuse cases de novo. "Under a de novo standard of review, we are not bound by the trial court's conclusions of law or findings of fact, although we do give weight to factual findings, particularly when they involve the credibility of witnesses." *In re Estate of Warrington*, 686 N.W.2d 198, 202 (Iowa 2004); *see also* Iowa R. Civ. P. 6.904(3)(*g*).

Finally, if an issue of statutory interpretation arises in our de novo review, we review issues of statutory interpretation for correction of errors at law. *State v. Wiederien*, 709 N.W.2d 538, 540 (Iowa 2006).

**III. Issue.**

Although Wilkinson raises numerous issues on appeal, we have discretion to review all the issues raised on appeal or in the application for further review, or only a portion thereof. *Ramirez-Trujillo v. Quality Egg, L.L.C.*, 878 N.W.2d 759, 768 (Iowa 2016). In exercising our discretion, we choose to review only the issue as to whether, on our de novo review, the evidence supports the district court's finding that Chapman "was a 'vulnerable elder' under section 235F.1(17) because she was unable to protect herself from financial exploitation due to her age." Accordingly, the court of appeals decision will stand as the final decision as to the other issues raised by Wilkinson on appeal.

**IV. Discussion and Analysis.**

The district court found that due to Chapman's age alone she was unable to protect herself from financial exploitation. The court of appeals found sufficient evidence to support this finding. In order for us to decide this issue, we must first interpret the applicable statute.

**A. Whether a Person Is a Vulnerable Elder if His or Her Age Standing Alone Makes That Person Unable to Protect Himself or Herself from Elder Abuse.** When interpreting our statutes, our goal is to determine legislative intent. *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004). To determine legislative intent, we look at the words the legislature chose when it enacted the statute. *Ramirez-Trujillo*, 878 N.W.2d at 770. When the legislature chooses to "act as its own lexicographer" by defining statutory terms, we are ordinarily bound by its definitions. *Sherwin-Williams Co. v. Iowa Dep't of Revenue*, 789

N.W.2d 417, 425 (Iowa 2010) (quoting *State v. Fischer*, 785 N.W.2d 697, 702 (Iowa 2010)). Additionally, we apply the fundamental rule of statutory construction that we should not construe a statute to make any part of it superfluous. *Civil Serv. Comm'n v. Iowa Civil Rights Comm'n*, 522 N.W.2d 82, 86 (Iowa 1994); *accord Iowa Auto Dealers Ass'n v. Iowa Dep't of Revenue*, 301 N.W.2d 760, 765 (Iowa 1981). Accordingly, we "presume the legislature included all parts of the statute for a purpose, so we will avoid reading the statute in a way that would make any portion of it redundant or irrelevant." *Rojas v. Pine Ridge Farms, L.L.C.*, 779 N.W.2d 223, 231 (Iowa 2010).

The general assembly enacted Iowa Code chapter 235F in 2014. 2014 Iowa Acts ch. 1107. This case presents our first opportunity to consider Iowa's elder abuse law. We begin with a review of the relevant statutory provisions.

Under the Code, financial exploitation is a form of elder abuse. Iowa Code § 235F.1(5)(*a*)(4). The Code provides,

> *"Financial exploitation"* relative to a vulnerable elder means when a person stands in a position of trust or confidence with the vulnerable elder and knowingly and by undue influence, deception, coercion, fraud, or extortion, obtains control over or otherwise uses or diverts the benefits, property, resources, belongings, or assets of the vulnerable elder.

*Id.* § 235F.1(8).

A " *'[v]ulnerable elder'* means a person sixty years of age or older who is unable to protect himself or herself from elder abuse as a result of age *or* a mental or physical condition." *Id.* § 235F.1(17) (emphasis added).

We find the following elements need to be proved by a person claiming elder abuse to qualify as a vulnerable elder as defined in section

235F.1(17): (1) The person must be sixty years or older, and (2) is unable to protect himself or herself from elder abuse as a result of one of the following: (a) age, (b) a mental condition, or (c) a physical condition. *Id.* The statute makes it clear that if a person is sixty years or older and age alone, without a mental or physical condition, makes someone unable to protect himself or herself from elder abuse, then that person is a vulnerable elder as defined in section 235F.1(17).

Other states have similar statues allowing a court to find a person can be subject to financial exploitation based on his or her age alone, without proving the person suffers from a mental or physical condition. For example, Alabama defines an elderly person as any person over the age of sixty. Ala. Code § 13A-6-191(3) (Westlaw current through Act 2016-485 of the 2016 1st Spec. Sess.). The Alabama Code defines financial exploitation as

> [t]he use of deception, intimidation, undue influence, force, or threat of force to obtain or exert unauthorized control over an elderly person's property with the intent to deprive the elderly person of his or her property or the breach of a fiduciary duty to an elderly person by the person's guardian, conservator, or agent under a power of attorney which results in an unauthorized appropriation, sale, or transfer of the elderly person's property.

*Id.* § 13A-6-191(5).

Colorado only requires the person to be over seventy years old for exploitation. *See* Colo. Rev. Stat. Ann. § 18-6.5-102(3), (10) (West, Westlaw current through 2016 2d Reg. Sess.). Connecticut's statutes are similar. *See* Conn. Gen. Stat. Ann. § 17b-450(1), (7) (West, Westlaw current through 2016 Sept. Special Sess.).

Thus, we believe the legislature intended that if a person's age makes a person unable to protect himself or herself from elder abuse, that person is a vulnerable elder as defined by the Code.

**B. Whether on Our De Novo Review, the Evidence Supports the District Court's Finding that Chapman Was a Vulnerable Elder Under Section 235F.1(17) Because She Was Unable to Protect Herself from Financial Exploitation Due to Her Age.** The record made below was sparse at best. However, there is crucial testimony relating to this issue. First, Chapman put all her property in the names of her children and effectively wiped out any net worth she accumulated during her lifetime. Second, both parties testified when Chapman gave the title of the mobile home to Wilkinson, Chapman was to remain living in the home. Third, Chapman lived in the home without any interference from Wilkinson for a period of years. Fourth, Wilkinson began posting eviction notices to Chapman only after his sister moved in with Chapman. Fifth, Wilkinson demanded from Chapman, an unemployed sixty-nine-year-old woman, a payment of $35,000 for her to remain living in the mobile home. Sixth, Chapman testified, "[I]t's just worrisome. I'm tired of having these eviction notices. And I'm just too old for it."

The district court viewed the testimony and concluded Chapman's age alone made her a vulnerable elder. In our de novo review, we give weight to the district court's factual findings, particularly when they involve the credibility of witnesses. *In re Estate of Warrington*, 686 N.W.2d at 202. Accordingly, we agree with the district court's finding and find Chapman's age made her unable to protect herself from elder abuse. She gave all her assets to her children. She was unemployed with a fixed income. Wilkinson demanded $35,000 from her to stay in the mobile home. At her age, she was unable to pay him. She voiced a concern that she was too old to handle the eviction notices Wilkinson was giving her.

In summary, Wilkinson took advantage of Chapman due to her age and financial condition. This evidence supports a finding Chapman was a vulnerable elder. The purpose of the elder abuse statute was to allow our elderly population to seek relief from actions such as Wilkinson's without the expense of a more costly and time consuming action that others argue are appropriate under the circumstances.

For these reasons, we find Chapman to be a vulnerable elder.

**V. Disposition.**

For all the reasons stated in this opinion and the court of appeals opinion, we affirm the judgment of the district court.

**AFFIRMED.**

All justices concur except Mansfield, Waterman, and Zager, JJ., who dissent.

**MANSFIELD, Justice (dissenting).**

I respectfully dissent, essentially for the reasons set forth in the well-reasoned dissent filed in the court of appeals. Rather than attempt to paraphrase that opinion, I will simply quote it in full, and then add a few observations of my own:

> The questions presented in this appeal are questions of first impression regarding the interpretation and construction of this newly-enacted statute. "In determining the meaning of statutes, our primary goal is to give effect to the intent of the legislature." *State v. Hearn*, 797 N.W.2d 577, 583 (Iowa 2011). "That intent is evidenced by the words used in the statute." *Id.* "The starting point of interpreting a statute is analysis of the language chosen by the legislature." *Id.*
>
> Chapter 235 allows a "vulnerable elder" to seek relief from elder abuse by filing a verified petition in the district court. *See* Iowa Code § 235F.2(1). As a prerequisite to obtaining relief, the petitioner must prove by a preponderance of the evidence that "elder abuse" occurred. The [C]ode sets forth four categories of elder abuse. As relevant here, the [C]ode defines "elder abuse" to include "financial exploitation." Iowa Code § 235F.1(5)(*a*)(4). " 'Financial exploitation' relative to a vulnerable elder means when a person stands in a position of trust or confidence with the vulnerable elder and knowingly and by undue influence, deception, coercion, fraud, or extortion, obtains control over or otherwise uses or diverts the benefits, property, resources, belongings, or assets of the vulnerable elder." Iowa Code § 235F.1(8). According to the plain language of the statute, to prove "financial exploitation," the petitioner must first establish the exploited person is a "vulnerable elder."
>
> The fighting issues in this case are the meaning of "vulnerable elder" and the sufficiency of the evidence regarding the same. The statute provides a " '[v]ulnerable elder' means a person sixty years of age or older who is unable to protect himself or herself from elder abuse as a result of age or a mental or physical condition." Iowa Code § 235F.1(17). The plain language of the statute requires proof of three elements. First, the person must be "sixty years of age or older." Second, the person must be "unable to protect himself or herself from elder abuse." Third, the person's inability to protect himself or herself from elder abuse must be "as a result of age or a mental or physical

condition." Only by requiring proof of all three elements, do we give effect to all of the words the legislature selected. *See Iowa Auto Dealers Ass'n v. Iowa Dep't of Revenue*, 301 N.W.2d 760, 765 (Iowa 1981) ("Moreover, a statute should not be construed so as to make any part of it superfluous unless no other construction is reasonably possible.").

The petitioner in this case failed to prove an inability to protect herself from elder abuse and failed to prove this inability was a result of her age or a mental or physical condition. The only thing we can discern from this record is the petitioner was sixty-nine years old at the time of the hearing. The petitioner did not introduce any evidence into the record regarding her ability or inability to protect herself from elder abuse. The only reasonable inference that could be made from this record, based on the petitioner's description of her living arrangement and the tone of her testimony and remarks, is the petitioner is an independent woman fully capable of protecting her own interests. The petitioner failed to present any evidence regarding her mental condition or physical condition. The petitioner also failed to present any evidence that her age, mental condition, or physical condition in any way impaired her ability to protect herself from elder abuse. In sum, the record shows only that the petitioner is sixty-nine years of age and that she is in a property dispute with her son. That is insufficient to establish elder abuse pursuant to chapter 235F.

While there is no controlling case, other jurisdictions with similar statutes have concluded the petitioner must establish an inability to self-protect caused by some statutorily-recognized condition. *See, e.g., Estate of Cole*, No. 1CA–CV 12-–0810, 2014 WL 1515730, at *4 (Ariz. Ct. App. Apr. 17, 2014) (stating it is a "threshold element[ ]" that the petitioner prove "the individual suffered from a physical or mental impairment that prevented the individual from protecting herself from abuse, neglect, or exploitation by others"); *State v. Maxon*, 79 P.3d 202, 207 (Kan. Ct. App. 2003) (stating "dependent adult" statute required proof the victim was unable to protect herself or himself); *Doe v. S.C. Dep't of Social Servs.*, 757 S.E.2d 712, 720 (S.C. 2014) (vacating order where "there is no evidence that Doe's advanced age substantially impaired her ability to adequately provide for her own care and protection"); *Farr v. Searles*, 910 A.2d 929, 930 (Vt. 2006) (vacating protective order where the petitioner failed to establish an infirmity impairing her ability to protect herself from abuse, neglect, or exploitation).

The requirement that the petitioner present some evidence of her inability to protect herself due to a statutorily-recognized cause is in accord with the purpose of the statute. The intent of this law and related elder abuse

laws is to provide protection for those who may be subject to abuse, neglect, or exploitation due to an inability to protect themselves. Without requiring proof of the inability to protect, the statute would encompass garden-variety legal claims that happen to be held by persons over the age of sixty. Such a result is overbroad in two respects. It creates a cause of action for persons outside the intended scope of the statute. It also creates unintended legal exposure for persons who happen to be in a dispute with someone over the age of sixty but who is not otherwise a "vulnerable elder."

For the foregoing reasons, I respectfully dissent. I would vacate the final elder abuse protective order and remand this matter for dismissal of the petition.

On the *law*, the court today does not appear to take a different view from the court of appeals dissent. That is, the court acknowledges that to prove she was a vulnerable elder, Chapman had to establish she was unable to protect herself due to her age. The court, however, goes on to conclude that Chapman met her burden as a *factual* matter. Here, I disagree.

The court's opinion lists six items supporting a finding that Chapman was a vulnerable elder. However, the first five are just background facts. The sixth item is the following testimony: "[I]t's just worrisome. I'm tired of having these eviction notices. And I'm just too old for it."

In my view, Chapman's colloquialism that she was "too old" to be receiving eviction notices falls short of demonstrating that she was unable to protect herself because of her age. Chapman's daughter was living with Chapman in the mobile home. When an eviction notice was posted stating that Chapman needed to be out by December 1, 2014, Chapman short-circuited any forcible entry and detainer proceeding by promptly going to court on November 5 seeking relief from "elder abuse." She was never in jeopardy of losing her residence.[1]

---

[1]In fact, after the temporary order was entered, Wilkinson had to ask for a brief continuance of the final hearing because of an Iowa National Guard obligation.

Although Wilkinson had sole legal title to this double-wide mobile home, the record here would support a finding that Chapman retained a life estate. All this, however, could have been worked out in an appropriate title proceeding. Such a proceeding would result in a final decree defining legal interests in the property. This would assure that the title to the property remained marketable, protect third parties who had dealings relating to the property, and also clarify the status of assets for Medicaid purposes. *See* Iowa Code § 249A.53(2)(*c*) (2015) (providing that Medicaid debt may be recovered to the extent of any "retained life estates").[2] A temporary injunction would also be available in a title proceeding if needed.

Moreover, the label of "elder abuse" can be stigmatizing. Wilkinson himself testified to his surprise upon learning that he was being charged with elder abuse: "I was floored by that." This potential for stigma provides an additional reason for not expanding the elder abuse law unduly. The elder abuse law was written to be, and should remain, a cause of action for persons who are unable to protect themselves "as a result of age," and not merely *have attained* a certain age. For these reasons, I would reverse the judgment of the district court and the decision of the court of appeals.[3]

Waterman and Zager, JJ., join this dissent.

---

[2]Although we have no such information in the record here, Medicaid planning is one reason why the elderly may transfer assets to their relatives. *See, e.g.*, *In re Estate of Johnson*, 739 N.W.2d 493, 494 n.2 (Iowa 2007).

[3]No issue is presented in this appeal as to whether the "financial exploitation" element in the statute has been met. *See* Iowa Code § 235F.1(8) (defining financial exploitation as "when a person stands in a position of trust or confidence with the vulnerable elder and knowingly and by undue influence, deception, coercion, fraud, or extortion, obtains control over or otherwise uses or diverts the benefits, property, resources, belongings, or assets of the vulnerable elder").