# IN THE SUPREME COURT OF IOWA

No. 18–0316

Filed June 21, 2019

**GEORGE E. STRUVE,** Petitioner by substitute petitioners **DIANNE LAWRENCE, PAUL STRUVE,** and **RONALD STRUVE,**

Appellants,

vs.

**PERRY STRUVE** and **CLAYTON STRUVE,**

Appellees.

---

Appeal from the Iowa District Court for Clinton County, Mark R. Lawson, Judge.

Appeal from the denial of a petition alleging elder abuse brought pursuant to Iowa Code chapter 235F (2016). **AFFIRMED.**

T. Randy Current and A. John Frey Jr. of Frey, Haufe & Current, P.L.C., Clinton, for appellants.

Brian P. Donnelly of Mayer, Lonergan & Rolfes, Clinton, guardian ad litem for appellant George Struve.

Steven E. Balk of Pepping, Balk, Kincaid & Olson, Ltd., Silvis, Illinois, for appellee Clayton Struve.

Christopher L. Farwell of Farwell & Bruhn, Clinton, for appellee Perry Struve.

**McDONALD, Justice.**

At the heart of this case is an intrafamily dispute regarding farmland. Dianne Lawrence, Paul Struve, and Ronald Struve, as substitute petitioners for their father George Struve, filed a petition for relief from elder abuse pursuant to Iowa Code chapter 235F (2016). In their petition, they alleged their brother Perry Struve and his son Clayton Struve committed elder abuse against George. Specifically, the substitute petitioners contended Perry and Clayton unduly influenced George to enter into below-market-rate lease agreements to farm George's land, to gift some of George's land to Perry and Clayton, and to write a new will to reflect the gifted land. The substitute petitioners sought relief for the loss associated with those transactions. The district court denied the petition with respect to the challenged transactions, concluding chapter 235F was a summary proceeding and the substitute petitioners failed to establish their father was a "vulnerable elder" subject to "financial exploitation" within the meaning of chapter 235F. The substitute petitioners timely filed this appeal.

I.

The substitute petitioners first contend the district court erred in concluding they failed to prove an entitlement to statutory relief. We review the district court's decision de novo. *In re Chapman*, 890 N.W.2d 853, 856 (Iowa 2017). This means we will decide anew the issues properly preserved for appellate review. *In re Estate of Cory*, 184 N.W.2d 693, 695 (Iowa 1971). However, "we afford deference to the district court for institutional and pragmatic reasons." *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017). As such, we give weight to the district court's factual findings. *Chapman*, 890 N.W.2d at 856; *Hensch*, 902 N.W.2d at 824.

To establish an entitlement to relief, the substitute petitioners were required to prove by a preponderance of the evidence their father was a vulnerable elder subject to elder abuse. *See* Iowa Code § 235F.5(1) (setting forth the burden of proof). A "vulnerable elder" is "a person sixty years of age or older who is unable to protect himself or herself from elder abuse as a result of age or a mental or physical condition." *Id.* § 235F.1(17). In *Chapman*, we held a petitioner must prove "(1) [t]he person [is] sixty years or older, and (2) is unable to protect himself or herself from elder abuse as a result of one of the following: (a) age, (b) a mental condition, or (c) a physical condition." 890 N.W.2d at 857. The Code sets forth four categories of elder abuse, including, as relevant here, financial exploitation. Iowa Code § 235F.1(5)(*a*)(1)–(4). Financial exploitation occurs

> when a person stands in a position of trust or confidence with the vulnerable elder and knowingly and by undue influence, deception, coercion, fraud, or extortion, obtains control over or otherwise uses or diverts the benefits, property, resources, belongings, or assets of the vulnerable elder.

*Id.* § 235F.1(8).

The substitute petitioners contend age, standing alone, is sufficient to establish a person is a vulnerable elder. We disagree. It appears the challenged transactions occurred in August, September, and October of 2015. At the time, George was eighty-five or eighty-six years old. However, the Code and *Chapman* make clear the substitute petitioners were required to prove both that George was sixty years old or older at the time of the challenged transactions and that George was unable to self-protect due to one of the statutorily-specified causes—age, mental condition, or physical condition.[1] *See id.* § 235F.1(17); *Chapman*, 890 N.W.2d at 857.

---

[1]A recent statutory amendment bolsters our conclusion the legislature did not intend for individuals to qualify as vulnerable elders based on age alone. On May 10,

Absent proof of the inability to self-protect, the statute would encompass garden-variety legal claims involving persons age sixty or older. Such a result is overbroad in two respects: first, it creates a cause of action for persons outside the intended scope of the statute; second, it creates unintended legal exposure for persons who happen to be in a dispute with someone who is over the age of sixty but who is not otherwise a vulnerable elder.

In the alternative, the substitute petitioners argue they proved George was unable to protect himself at the relevant time due to his declining mental health. They rely primarily on a cognitive-function evaluation performed in October 2016 by neuropsychologist Dr. Daniel Tranel. Dr. Tranel diagnosed George with progressive dementia. Dr. Tranel reevaluated George one year later in October 2017. After that evaluation, Dr. Tranel concluded George's cognitive functioning was in continuing decline and George was not able to care for himself without support. Dr. Tranel provided a retrograde assessment and found George might have been mildly impaired at the time of the challenged transactions. In addition to Dr. Tranel's opinion, the substitute petitioners rely on the fact George changed his legal affairs and his estate plan on multiple occasions in 2015 and 2016. They contend the changes evidence George's inability to self-protect.

On de novo review, we conclude the substitute petitioners failed to prove George was a vulnerable elder at the time of the challenged transactions. With respect to the medical evidence, while Dr. Tranel's deposition testimony is relevant, it is not dispositive. *See In re Estate of Springer*, 252 Iowa 1220, 1225, 110 N.W.2d 380, 384 (1961) (stating "the

---

2019, Iowa Code section 235F.1(17) was amended to remove age as one of the statutorily-specified causes that could be used to show a vulnerable elder is unable to self-protect. *See* 2019 Ia. Legis. Serv. ch. 118 (H.F. 328) (West 2019).

condition of the testator's mind at other times" merely "throw[s] light upon the condition of [her] mind at the time of making the will"). There was contemporaneous medical evidence contrary to Dr. Tranel's opinion that showed George was not suffering from any mental health conditions at the relevant time. George underwent a mini mental status evaluation in 2015 and scored 29/30. During that year, George also attended regular appointments with his primary care physician of more than thirty years. George's medical records from May 2014 through May 2016 show that his memory and judgment were within normal limits; the records make no reference to dementia. In July 2015, nursing home staff reported that George had clear comprehension.

George's conduct during the relevant time also showed his mental health was unimpaired. After George's wife died in 2014, George served as executor of her estate. He was issued a state driver's license in the same year. George managed his own finances until midyear in 2016 when he established a voluntary conservatorship. He served as a trustee for the Elk River Township well into 2016 and regularly attended township meetings. He continued to work on his farm. In short, George was active and appeared to be in good health. There was no indication from his conduct that George was unable to protect himself.

The evidence showed that people who interacted with George during the relevant time period thought George competent and had no concern regarding his mental health and ability to conduct his own affairs. Joel Kaczinski, an acquaintance of George's since childhood, notarized George's farm leases in 2014 and believed George to be competent at the time. George interacted with two different attorneys during the relevant time, and neither questioned his competency. Rebecca Widener, who had known George for twenty years, testified she visited George in early 2016

and noticed no cognitive impairment. There was also evidence showing the substitute petitioners treated George as though he could handle his own affairs. In February 2016, Ronald and Dianne reported to law enforcement that George was "of good mind" and was capable of operating a vehicle. In November 2015, after the transactions at issue in this case, Ronald borrowed $3000 from George through an executed loan agreement. At trial, Ronald was unable to reconcile his claim that George was a vulnerable elder with the fact that Ronald borrowed money from George at the same time. Ronald testified, "I don't square that circle. I don't have to square that circle." Ronald's inability to "square that circle" casts doubt on his credibility and current allegations.

The most telling evidence that George was able to protect himself during the relevant time period is the fact he did so. In February and March 2016, George complained to his attorney that he was frustrated with the family's bickering over the farmland. George then took the initiative to establish a voluntary conservatorship to protect himself and stop the children from bothering him regarding the farmland. Clinton National Bank served as George's conservator.

We further note the evidence showed the changes to George's estate plan were consistent with George's intentions. Attorney Glenn Bartelt testified George's "number one priority in his estate plan [was] to maintain the Struve family farming operation beyond his lifetime." George's decisions to enter into below-market-rate lease agreements for the benefit of Clayton and to deed Perry and Clayton most of the family farmland were consistent with George's and his wife's intent to keep the farms within the family. Perry was the only one of their children who pursued farming as an occupation, and Clayton was the only one of their grandchildren who

pursued farming. The transactions at issue here are merely a continuation or culmination of a plan to keep the farms within the Struve family.

In sum, on de novo review, we conclude the substitute petitioners failed to prove by a preponderance of the evidence that George was a vulnerable elder at the time of the challenged transactions. Because we conclude the substitute petitioners failed to prove George was a vulnerable elder, we need not address the issue of whether the substitute petitioners proved financial exploitation within the meaning of the statute.

## II.

The substitute petitioners also raise several procedural challenges. The substitute petitioners argue the district court should have allowed them to amend their petition so as to join additional causes of action and to join Struve Boy Farms, LLC, as a defendant. Struve Boy Farms was the business entity created for Clayton's farming operation. The substitute petitioners also contend the district court should have allowed discovery of George's attorneys' files. Underlying these claims of error lies a disagreement between the parties regarding the nature of chapter 235F: the substitute petitioners contend chapter 235F creates a cause of action to be prosecuted like any other action; and the defendants contend chapter 235F is a limited, summary proceeding. We first address the nature of chapter 235F.

## A.

The general assembly enacted chapter 235F in 2014. *See* 2014 Iowa Acts, ch. 1107, §§ 1–8 (codified at Iowa Code § 235F). The Act provides, "A vulnerable elder or a substitute petitioner may seek relief from elder abuse by filing a verified petition in the district court." Iowa Code § 235F.2(1). A "substitute petitioner" is "a family or household member, guardian, conservator, attorney in fact, or guardian ad litem for a

vulnerable elder, or other interested person who files a petition under this chapter." *Id.* § 235F.1(15).

Review of the statutory framework shows the statute is a summary proceeding intended to provide expedited relief. The Code states that a petitioner must file a verified petition containing specific information. *Id.* § 235F.2(1). Standard forms, similar to the forms provided in summary proceedings for relief from domestic abuse arising under chapter 236, are made available to any petitioner. *Id.*; *see also id.* § 236.3A. The standard forms are required to be used by pro se petitioners. *Id.* § 235F.3(1)–(2). Temporary relief can be provided on an ex parte basis. *Id.* §§ 235F.2(2), 235F.5(2). The Code requires the action be expedited. Specifically, the district court must hold a hearing on the petition "[n]ot less than five and not more than fifteen days after commencing a proceeding and upon notice to the other party." *Id.* § 235F.5(1). Because of the expedited hearing requirement, civil discovery is not available under chapter 235F. Indeed, under the rules of civil procedure, discovery could not even be initiated prior to the expedited hearing date. *See* Iowa R. Civ. P. 1.507(1) (providing for a discovery conference no later than "21 days after any defendant has answered or appeared"); *id.* 1.505(1)(*a*) ("[P]art[ies] may not seek discovery from any source before the parties have [conducted a discovery conference]."). Instead of civil discovery, "[u]pon application of a party, the court shall issue subpoenas requiring attendance and testimony of witnesses and production of papers." Iowa Code § 235F.5(4).

The relief available also shows the proceedings are limited in nature. The Code provides the court may direct a defendant to refrain from controlling or transferring the vulnerable elder's "funds, benefits, property, resources, belongings, or assets." *Id.* § 235F.6(2)(*a*), (*d*). The district court may also require the defendant to "return custody or control" of the same

to the vulnerable elder. *Id.* § 235F.6(2)(*b*). The district court may provide additional relief but only if "necessary to prevent or remedy the financial exploitation." *Id.* § 235F.6(2). "The court may order that the defendant pay the attorney fees and court costs of the vulnerable elder or substitute petitioner." *Id.* § 235F.6(7). The Code specifically prohibits the district court from "[a]llow[ing] any person other than the vulnerable elder to assume responsibility for the funds, benefits, property, resources, belongings, or assets of the vulnerable elder." *Id.* § 235F.6(3)(*a*). The district court may not "[g]rant[] relief that is more appropriately obtained in a protective proceeding filed under chapter 633." *Id.* § 235F.6(3)(*b*). Further, the district court is prohibited from entering any order "affect[ing] title to real property." *Id.* § 235F.6(8).

For these reasons, we conclude the defendants have the better argument. Chapter 235F is a summary proceeding intended to provide limited but expedited relief to a vulnerable elder subject to elder abuse.

B.

With that background, we address the district court's ruling on the substitute petitioners' motion for leave to amend the petition. Our review is for an abuse of discretion. *See Daniels v. Holtz*, 794 N.W.2d 813, 817 (Iowa 2010) ("Denial of a motion to amend will only be reversed where a clear abuse of discretion is shown.").

Although chapter 235F is a summary proceeding, this case was not prosecuted in accord with the statute. The substitute petitioners filed their petition on September 9, 2016. The case did not come on for an expedited hearing within fifteen days as required by the Code. Instead, the case was docketed and treated as a regular civil action. Over the next year, the parties conducted significant discovery and motion practice. More than one year later, in November 2017, a different district court judge was

assigned to the case. The new judge concluded chapter 235F proceedings were summary proceedings and the prior discovery and motion practice were improper. The new judge denied the substitute petitioners' pending motion to amend the petition to add additional claims and the motion to amend the petition to add Struve Boy Farms, LLC as a defendant. The new judge emphasized the matter should proceed to trial as soon as possible.

The district court did not clearly abuse its discretion in denying the motion for leave to amend to add additional claims to the petition. Our understanding of the structure and purpose of the statute leads us to conclude joinder of additional claims to a petition for relief from elder abuse is disallowed and leads us to conclude the assertion of counterclaims is also disallowed. As noted, chapter 235F is a summary proceeding. The joinder of additional claims would frustrate the expedited nature of the proceeding or would force the defendants to defend additional claims without the procedural rights set forth in the rules of civil procedure. For example, chapter 235F provides the district court must hold a hearing within fifteen days of filing a petition for relief from elder abuse and notice to the defendant, but the rules of civil procedure provide a party with twenty days to file an answer to any claim. *Compare* Iowa Code § 235F.5(1), *with* Iowa R. Civ. P. 1.303(1). By way of another example, as discussed above, ordinary civil discovery under chapter 235F is effectively disallowed due to the timing and sequencing of civil discovery.

In addition, substitute petitioners qua substitute petitioners lack standing to assert claims on behalf of a vulnerable elder. Chapter 235F grants them only the authority to "file[] a petition under this chapter." Iowa Code § 235F.1(15). It does not grant them authority to assert any and all claims on behalf of the allegedly vulnerable elder. Indeed, while

the Code authorizes a substitute petitioner to file a petition under chapter 235F, it does not authorize a substitute petitioner to act in any broader capacity on behalf of the vulnerable elder. The statute explicitly preserves the vulnerable elder's rights "to contact and retain counsel," to access personal records, to object to any protective order entered in the case, "[t]o request a hearing," and "[t]o present evidence and cross-examine witnesses at [any such] hearing." *Id.* § 235F.2(5)(*a*)–(*e*).

In short, the joinder of common law claims is wholly inconsistent with chapter 235F, but the disallowance of the joinder of additional claims works no substantial hardship on a vulnerable elder or a substitute petitioner. It is not at all unusual to disallow or limit the joinder of claims or assertion of counterclaims in statutorily-limited causes of action. *See, e.g., id.* § 598.3 (disallowing joinder of causes of action for dissolution-of-marriage proceedings); *id.* § 643.2 (providing that in a replevin action "there shall be no joinder of any cause of action not of the same kind, nor shall there be allowed any counterclaim"); *id.* § 646.1 (disallowing joinder of claims in actions for the recovery of real property); *id.* § 648.19(1) (disallowing joinder of actions in forcible-entry-and-detainer proceedings); *id.* § 651.7 (limiting joinder of claims in partition proceedings). Further, the Code makes clear the parties can assert additional claims outside chapter 235F in the normal course. *See id.* § 235F.8(1) ("A proceeding under this chapter . . . is in addition to any other civil or criminal remedy.").

We next address whether the district court abused its discretion in disallowing the motion to amend to add Struve Boy Farms, LLC as an additional defendant. Iowa Code section 235F states only "a person" can be found to have committed elder abuse through financial exploitation. *Id.* § 235F.1(8). The district court concluded an LLC was not a person within

the meaning of the statute and therefore an LLC could not commit elder abuse and could not be added as a defendant. We conclude this was legal error. The district court abused its discretion in disallowing the amendment.

Section 235F does not define the term "person." However, Iowa Code section 4.1(20) states, "Unless otherwise provided by law, '*person*' means individual, corporation, *limited liability company,* government or governmental subdivision or agency, business trust, estate, trust, partnership or association, or any other legal entity." *Id.* § 4.1(20) (second emphasis added). We must apply that definition of the term "person" "unless such construction would be inconsistent with the manifest intent of the general assembly, or repugnant to the context of the statute." *Id.* § 4.1.

Defining "person" to include LLCs for purposes of section 235F.1(8) is consistent with both the legislative intent and the context of chapter 235F. That chapter was designed to protect vulnerable elders from abuse. *See Chapman,* 890 N.W.2d at 858–59. The exclusion of LLCs from the definition of "person" would allow individuals to use LLCs as shields behind which they could commit abuse. There is no reason to exclude LLCs from the operation of the statute.

Application of the canon *expressio unius est exclusio alterious* supports the conclusion the term "person" includes LLCs. *See Kucera v. Baldazo,* 745 N.W.2d 481, 487 (Iowa 2008) (applying the canon of construction to "discern legislative intent"); *Marcus v. Young,* 538 N.W.2d 285, 289 (Iowa 1995) (same). According to that canon of construction, "legislative intent is expressed by omission as well as by inclusion, and the express mention of one thing implies the exclusion of others not so mentioned." *Kucera,* 745 N.W.2d at 487 (quoting *Meinders v. Dunkerton*

*Cmty. Sch. Dist.*, 645 N.W.2d 632, 637 (Iowa 2002)). Here, Iowa Code section 235F.1(14) excludes certain entities from the operation of the statute:

> "*Stands in a position of trust or confidence*" means the person . . .
>
> . . . .
>
> . . . [i]s a person who is in a confidential relationship with the vulnerable elder. . . . [A] confidential relationship does not include a legal, fiduciary, or ordinary commercial or transactional relationship the vulnerable elder may have with a bank incorporated under the provisions of any state or federal law, any savings and loan association or savings bank incorporated under the provisions of any state or federal law, any credit union organized under the provisions of any state or federal law, . . . or any agent, agency, or company regulated under chapter 505, 508, 515, or 543B.

The fact the legislature specifically excluded certain types of business associations from liability under chapter 235F without excluding LLCs, generally, supports the conclusion the term "person" includes LLCs unless otherwise excluded by section 235F.1(14).

Although we conclude the district court abused its discretion in denying the motion for leave to amend on the ground stated, we conclude remand is not necessary. "It is well-settled that nonprejudicial error is never ground for reversal on appeal." *Jones v. Univ. of Iowa*, 836 N.W.2d 127, 140 (Iowa 2013). Here, the substitute petitioners failed to prove George was a vulnerable elder as a threshold for relief. Whether or not Struve Boy Farms, LLC was joined as a defendant was immaterial to this issue and remand is not necessary.

## C.

In their final claim of error, the substitute petitioners contend the district court should have allowed discovery of George's attorneys' respective files. "We review the district court's decisions regarding

discovery for an abuse of discretion." *Comes v. Microsoft Corp.*, 775 N.W.2d 302, 305 (Iowa 2009). "An abuse of discretion consists of a ruling which rests upon clearly untenable or unreasonable grounds." *Lawson v. Kurtzhals*, 792 N.W.2d 251, 258 (Iowa 2010). In reviewing decisions regarding discovery, we give the district court wide latitude. *Exotica Botanicals, Inc. v. Terra Int'l, Inc.*, 612 N.W.2d 801, 804 (Iowa 2000).

The issue regarding discovery of George's attorneys' files arose twice during the district court proceeding. Initially, the substitute petitioners served subpoenas on George's attorneys, and the attorneys resisted the subpoenas. During trial, the district court ruled George's guardian ad litem could waive George's attorney–client privilege and the attorneys would be allowed to testify but the substitute petitioners could not obtain discovery of the files. The court stated,

> This also gets back to . . . the conversation that we've had numerous times on this case in the past. It's a summary proceeding. Normally there wouldn't b[e] any discovery. But in this particular case we're here, they're here, I'll expect them to testify, but as far as having access to their file, no.

Between the second and third days of trial, the guardian ad litem filed an application for access to George's attorneys' files. The district court denied the application.

We need not resolve the issue of whether the district court abused its discretion in disallowing discovery of the attorneys' files. Even if we were to find the district court's ruling was an abuse of discretion, the error would be harmless. "It is well-settled that nonprejudicial error is never ground for reversal on appeal." *Jones*, 836 N.W.2d at 140. "Furthermore, we do not presume the existence of prejudice based on an erroneous discovery ruling." *Id.* "[T]he burden rests upon the appellant not only to establish error but to further show that prejudice resulted." *Id.* (alteration

in original) (quoting *In re Behrend's Will*, 233 Iowa 812, 818, 10 N.W.2d 651, 655, (1943)).

The substitute petitioners have not made any attempt to show how the discovery of the attorneys' files would have changed the outcome of the case. Instead, they merely assert they have lost the opportunity to access information. "A bare assertion of prejudice based on an inability to 'access all the evidence' is not enough." *Id.* at 141. This record affirmatively shows a lack of prejudice. The district court allowed the attorneys to testify without any restriction regarding their communications with George. There is no showing or claim the client files would have revealed additional information not divulged during trial.

Accordingly, we affirm the district court's rulings denying access to the attorneys' files.

III.

For these reasons, we affirm the judgment of the district court.

**AFFIRMED.**

All justices concur except Appel, J., who concurs specially.

**APPEL, Justice (concurring specially).**

I agree with the majority that substitute petitioners here did not prove elder abuse by a preponderance of the evidence. I also agree that, to the extent the district court committed procedural errors, these do not rise to the level of reversible error.

I write separately for two reasons. First, the question of whether George Struve was a vulnerable elder is, I think everyone agrees, a close one. *See* Iowa Code § 235F.1(17) (2016); *In re Chapman*, 890 N.W.2d 853, 857–58 (Iowa 2017). On this issue, we make no grand legal pronouncement, but only announce the result of a granular, de novo review of the evidence before the court.

There was evidence supporting the substitute petitioners in this case. For instance, there was evidence that after the death of his wife, George did not seem to know where her will was or who drew it up. There was evidence that George did not remember a recent canoe trip with one of his sons shortly after his wife's death.

Although a local doctor administered a test that found George had good mental status, the substitute petitioners offered expert testimony noting the shortcomings of the examination. Yet, the substitute petitioners' expert first examined George in October 2016, while the key transactions in question occurred a year earlier. The expert testified that there would have been some "milder" deficits in 2015 but that he could not testify exactly about George's mental state at that time.

On the other hand, there were lay witnesses who testified George was essentially of sound mind. But some of the lay testimony related to encounters well before fall 2015. Attorneys Steven Kahler and Glenn

Bartelt testified that George was of sound mind when they assisted him in various transactions.

In this close case and on de novo review, I concur in the result reached in division I of the majority opinion because the substitute petitioners did not meet their burden of proving George was a vulnerable elder by a preponderance of the evidence. The evidence is mixed, but the notion that George wanted to ensure continued operation of the family farm by Perry and Clayton strikes me as quite plausible and does not appear to have been the product of duress. As pointed out by the majority, he seemed aware of family dynamics and took steps to protect himself. While the substitute petitioners may have proved that George had limited capacity later, they did not prove that George's capacity was limited at the time he executed the relevant documents in fall 2015.

Second, I think proceedings under the elder abuse statute are not necessarily summary proceedings. It is true, as the majority points out, that the statute provides for a hearing within five to fifteen days of the filing of a petition. Iowa Code § 235F.5(1). But the statute also authorizes the district court to continue the hearing, *id.* § 235F.5(3), (5), and allows the district court to enter temporary orders while a hearing is continued, *id.* § 235F.5(3). Additionally, by making the rules of civil procedure applicable and providing for continuances, the statute suggests that discovery and motion practice can be appropriate. *See id.* §§ 235F.5(3), .8(1); *see also id.* § 235F.4 ("The court may on its own motion or on the motion of a party appoint a guardian ad litem for a vulnerable elder if justice requires.").

Further, the broad remedies authorized by the statute—including injunctive relief, various dispositions associated with property, payment of attorney fees and other costs, entrance of consent orders, and "other relief

that the court considers necessary to provide for the safety and welfare of the vulnerable elder"—might very well necessitate a continuance for discovery or negotiation among the parties. *Id.* §§ 235F.2(3)(*c*), .6. Still, because the substitute petitioners in this case were able to continue the hearing and conduct discovery, I do not find reversible error on this issue. I therefore concur in the result reached in division II of the majority opinion.