# IN THE COURT OF APPEALS OF IOWA

No. 20-0754
Filed August 4, 2021

**STATE OF IOWA,**
　　Plaintiff-Appellee,

**vs.**

**SKYLAR SHAE EDWARDS,**
　　Defendant-Appellant.
_____

　　Appeal from the Iowa District Court for Jones County, Mary E. Chicchelly, Judge.

　　The defendant appeals the suppression ruling in her conviction for possession of marijuana.  **AFFIRMED.**

　　Martha J. Lucey, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

　　Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

　　Considered by Tabor, P.J., May, J., and Blane, S.J.*

　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**BLANE, Senior Judge.**

Skylar Edwards appeals her conviction for possession of marijuana contending the police stop was impermissibly prolonged and the court should have sustained her suppression motion. We conclude the police officer did not impermissibly prolong the stop and affirm.

## I. Facts and Prior Proceedings

On November 14, 2019, Jones County Sheriff's Deputy Derek Denniston was on duty in his stationary patrol vehicle around 6:30 p.m.[1] It was dark out. Edwards's vehicle passed, and Denniston noticed it did not have a front license plate. After it passed, he saw there was no rear license plate either. Denniston followed Edwards, and prior to initiating his emergency lights, a temporary registration was not clearly visible. He pulled Edwards over. As he walked up behind Edwards's vehicle, in his own words, "I made it to the back of the vehicle, I saw that it had a sticker in the back window. At that point I shined my flashlight on it to be able to read the date that was on it."[2] He continued to the driver's window and made contact with Edwards. He explained to Edwards the reason for the stop was no license plates.[3] Denniston testified he then asked her for "a bill of sale for the purchase or proof of purchase" and "[b]y the time I got to the vehicle, [Edwards] had already had her window down. As soon as I started talking to her, I could

---

[1] The facts are verified by our review of the patrol vehicle dash-camera video.

[2] Denniston's testimony at the hearing on Edwards's motion to suppress.

[3] From the minutes of testimony to which Edwards stipulated at her bench trial. In conducting a de novo review, "we may consider evidence presented at the suppression hearing as well as evidence presented at trial." *State v. Kinkead*, 570 N.W.2d 97, 99 (Iowa 1997).

smell [marijuana]." He requested consent to search, which Edwards granted, and he found drug paraphernalia and vape pens that tested positive for marijuana compounds.

Edwards moved to suppress the evidence arguing that once Denniston saw the temporary registration card he no longer had reasonable suspicion or probable cause to extend the stop and impermissibly continued the detention by asking her for proof of purchase. Following the suppression hearing, the district court found

> Denniston had reasonable suspicion or probable cause to believe a traffic violation had occurred by the Defendant's vehicle not having license plates, and that prior to reasonable suspicion dissipating for that infraction, the deputy, by virtue of observing the smell of marijuana emanating from the Defendant's vehicle, developed probable cause that a separate criminal offense was afoot.

The district court denied the motion. Edwards consented to a trial on the minutes, and the court found her guilty. The court sentenced Edwards to sixty days incarceration with all but two days suspended and placed her on self-supervised probation. Edwards appeals.

## II. Scope of Review

"When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo." *State v. Smith*, 919 N.W.2d 1, 4 (Iowa 2018) (quoting *State v. Coffman*, 914 N.W.2d 240, 244 (Iowa 2018)). We consider the whole record and make an individual assessment based on the totality of the circumstances. *Coffman*, 914 N.W.2d at 244. "Each case must be evaluated in light of its unique circumstances." *Id.* (quoting *State v. Kurth*, 813 N.W.2d 270,

272 (Iowa 2012)). We give deference to the district court's findings of fact, but we are not bound by them. *State v. Storm*, 898 N.W.2d 140, 144 (Iowa 2017).

### III. Analysis[4]

The Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution protect individuals from unreasonable search and seizure. *See State v. McNeal*, 867 N.W.2d 91, 99 (Iowa 2015). Generally, searches and seizures conducted without a warrant are per se unreasonable. *State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002). Such searches must fall within a recognized exception to the warrant requirement. *Id.* One such exception allows a police officer to stop a vehicle or an individual for investigatory purposes if there is "reasonable suspicion that a criminal act has occurred or is occurring." *Id.* If a traffic violation actually occurred and the officer witnessed it, the State has established probable cause justifying the stop. A reasonable mistake of fact does not negate justification for a stop based on probable cause. *State v. Tyler*, 830 N.W.2d 288, 292 (Iowa 2013) (internal citations omitted). Stopping the vehicle and detaining its occupants constitutes a seizure. *State v. Coleman*, 890 N.W.2d 284,

---

[4] The State contests error preservation in part, arguing Edwards did not challenge the propriety of the initial stop below. Edwards now argues in part, "Denniston's video proves that the stop never should have occurred" because "[t]he temporary plate was visible to Denniston as he followed Edwards." Edwards also attempts to argue Denniston used the registration violation as a general or anticipatory warrant. Edwards did not raise either argument below so we will not address them. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). In any case, a traffic violation alone, however minor, is sufficient cause to stop a vehicle. *See State v. Brown*, 930 N.W.2d 840, 856 (Iowa 2019).

287–88 (Iowa 2017). So a traffic stop must be reasonable under the circumstances. *Kreps*, 650 N.W.2d at 641.

Deputy Denniston pulled Edwards over for a traffic violation: Iowa Code section 321.37(1) (2019) requires most motorists[5] to display front and rear registration plates. The vehicle may, however, operate for forty-five days "after the date of delivery of the vehicle" if a card saying "registration applied for" is attached to its rear. *Id.* § 321.25. The card has to provide the dealer's registration number and the date of delivery. *Id.*

In this appeal, the initial stop is not contested. Relying on *Coleman*, Edwards contends Denniston impermissibly prolonged the stop after seeing her temporary registration card properly posted, pursuant to section 321.25. She argues the reasonable suspicion for the stop dissipated at that point because there was no more suggestion of a criminal act. So the evidence resulting from the extension of the seizure should have been suppressed.

*Coleman* holds that after stopping a motorist on suspicion of driving while suspended, but then determining that the driver was not the motorist in question, the officer had to let the motorist go "without further ado." 890 N.W.2d at 301. The supreme court determined the officer's further request for the driver's license, registration, and proof of insurance—resulting in a driving while barred charge for Coleman—was impermissible because "at the time [the police officer] made his requests, [he] no longer had reasonable suspicion that a traffic offense had been committed." *Id.* at 287. At that point, "the officer is required to allow the driver to

---

[5] The provision excludes "autocycle[s], motorcycle[s], motorized bicycle[s], [and] truck tractor[s]." Iowa Code § 321.37(1).

go on his or her way after the resolution of the reason for the stop." *Id.* at 301. "This can be accomplished by a brief gesture, an announcement from the back of the vehicle, or a brief conversation at the driver's window." *Id.*

At the suppression hearing, Denniston agreed that the sole purpose of pulling Edwards over was for the lack of plates. Edwards's counsel asked Denniston, "[W]hen you noticed that there was a temporary license plate, did you have any indication that the defendant was doing anything illegal." Denniston's response was: "When I saw the license plate, that was the sole reason for the stop. So at that point I had nothing else other than the license plate."

Denniston testified it is his "standard procedure" upon seeing a temporary license plate to "still check the bill of sale to make sure that that belongs to that vehicle." Edwards's argument is that pursuant to the holding in *Coleman*, it was unreasonable for Denniston to ask for her bill of sale because there was no reason to believe the registration card did not go with her vehicle. She argues that prolonging the stop to ask for the bill of sale resulted in Denniston smelling marijuana and obtaining consent for a search, the results of which she contends, should have been suppressed. But, as stated in *Coleman*, Deputy Denniston could approach the driver's window to explain the reason for the stop. The record also supports that Denniston approached Edwards's driver window to explain the reason for the stop. Even before prolonging the stop, Denniston smelled marijuana coming out of the vehicle. In *Coleman*, the supreme court concluded "that when the reason for a traffic stop is resolved *and there is no other basis for reasonable suspicion*, article I, section 8 of the Iowa Constitution requires that the driver must be allowed to go his or her way without further ado." *Id.* at 301 (emphasis added).

Here, as found by the district court and supported by the record, the deputy had another basis for reasonable suspicion when he smelled marijuana emanating from vehicle. Denniston testified that Edwards had her window open by the time he got to her car and he smelled marijuana immediately when he started talking with her, giving him a basis for reasonable suspicion to extend the stop and seizure. Considering the facts and circumstances particular to this case, we conclude he acted reasonably and the stop was not unreasonably prolonged.

**IV. Conclusion**

Because we conclude the officer acted reasonably under the circumstances, we affirm the district court's denial of the motion to suppress and affirm the conviction and sentence.

**AFFIRMED.**

May, J., concurs; Tabor, P.J., dissents.

**TABOR, Judge** (dissenting)

I respectfully dissent. The majority justifies the deputy's search of Edwards's car on a ground neither argued to the district court by the prosecutor nor supported by the record.

At the suppression hearing, the prosecutor asserted the reasonable suspicion for the traffic stop "only dissipated when the temporary card that the officer did observe in the back of the vehicle could be compared to a bill of sale." The prosecutor continued: "Deputy Denniston, the second phrase of out his mouth was about the bill of sale. He was trying to confirm whether or not he had reasonable suspicion, and that's when probable cause of the second crime appeared in front of him." The district court adopted that theory, noting that when the deputy approached the driver's open window to ask for the bill of sale, he could smell marijuana.[6] The court held, "It was then, at a moment when reasonable suspicion had not yet dissipated relative to the possible vehicle registration violation, that probable cause arose relative to a separate criminal offense."

That rationale was faulty. As soon as Deputy Denniston determined Edwards had properly displayed a temporary registration card in her back window, he no longer had reasonable suspicion for the traffic stop. Rather than ask Edwards for a bill of sale and her driver's license, the deputy should have let her leave. Under the search and seizure provision of article I, section 8 of the Iowa Constitution, an investigatory stop must end when reasonable suspicion is no

---

[6] The district court recalled Denniston testifying that he smelled "the strong odor of marijuana." That recollection was inaccurate. The deputy described the odor as "light," not "strong." Also, the deputy did not testify that he smelled marijuana when approaching the driver's window, but rather when he "started talking to her."

longer present. *State v. Coleman*, 890 N.W.2d 284, 285 (Iowa 2017) (overruling *State v. Jackson*, 315 N.W.2d 766, 767 (Iowa 1982), which allowed officer to ask driver for documents even after realizing his mistake of fact leading to the stop).

And to its credit, the majority does not embrace the district court's rationale—that the display of a temporary plate allowed the deputy to detain the driver to verify the registration documents. *See State v. Andrews*, 705 N.W.2d 493, 496 (Iowa 2005) (doubting officers may investigate a registration violation when they can see valid temporary registration tags); *see also State v. Hollie*, 854 N.W.2d 695, 699 (Iowa Ct. App. 2013) (reversing denial of suppression motion when officer had no reasonable grounds to believe that vehicle displaying temporary plate was not properly registered). What's more, the majority appears to recognize that the deputy's practice of checking the bill of sale in every stop of a vehicle bearing a temporary registration card is not reasonable under *Coleman*.

But even with that recognition, the majority affirms the suppression ruling on a ground first raised by the State on appeal. In its newly minted argument, the State contends that "even if this Court were to conclude that merely seeing a tag in the rear window eliminated the cause to continue the seizure and precluded Denniston from asking Edwards if she possessed proof of purchase, *Coleman* still would not dictate reversal." The State speculates that even if the deputy had not asked Edwards for her proof of purchase, he would have smelled marijuana when he appeared at the driver's window to explain his mistake, providing a new reason to investigate.

True, *Coleman* anticipated an ill-conceived stop would end with "a brief gesture, an announcement from the back of the vehicle, or a brief conversation at

the driver's window." 890 N.W.2d at 301.  And maybe a brief conversation could lead to independent probable cause.  *See United States v. Edgerton*, 438 F.3d 1043, 1051 (10th Cir. 2006) (acknowledging possibility that courtesy encounter between officer and driver might independently give rise to facts creating reasonable suspicion of criminal activity, thus warranting further investigation).  But the prosecutor did not make this alternative argument at the suppression hearing.  *See DeVoss v. State*, 648 N.W.2d 56, 63 (Iowa 2002) ("[O]ne party should not ambush another by raising issues on appeal, which that party did not raise in the district court.").  In turn, the district court limited its ruling to the officer's ability to smell marijuana "prior to reasonable suspicion dissipating" for the license-plate investigation.

Thus we have no fact-finding to show that the deputy would have detected the "light" odor of marijuana even if he had not asked Edwards for the bill of sale and her driver's license.  He never fielded that question.  Contrary to the majority's framing, the deputy did not testify he smelled marijuana "immediately" when he approached the driver's window.  He testified: "As soon as I started talking to her, I could smell it."  But that was while the deputy was talking to Edwards about the bill of sale.  It is not clear from the record that had he promptly told her she was free to go because the stop was based on his mistake that he would have smelled marijuana from the paraphernalia or vape pen.  Even reviewing de novo, we cannot reach issues not properly preserved.  *See Struve v. Struve*, 930 N.W.2d 368, 371 (Iowa 2019).

Moreover, even if preservation were not a problem, these facts do not fit the fleeting explanation of the officer's mistake envisioned in *Coleman*.  The

conversation here was not so brief. The dash-cam video shows Denniston talking to Edwards for over three minutes before returning to his squad car to run her driver's license for outstanding warrants. Denniston said nothing to Edwards about the odor until after he ran her driver's license. This record does not support the majority's factual finding that Denniston would have developed probable cause to investigate marijuana possession without the unreasonable extension of the stop.

One final point about the search. The parties both note on appeal that the deputy obtained consent to search Edwards's car. Yet the district court based its suppression ruling on probable cause, not consent. True, our supreme court has held "a trained officer's detection of a sufficiently distinctive odor" of marijuana may establish probable cause. *See State v. Watts*, 801 N.W.2d 845, 854 (Iowa 2011). But Denniston did not justify his seizure of the drug paraphernalia based on probable cause developed from detecting a "light odor" of marijuana. Rather, Denniston planned to testify that he requested consent to her search the car, and Edwards agreed. It is unlikely that consent obtained under these circumstances was voluntary under article I, section 8 of the Iowa Constitution. *See State v. Pals*, 805 N.W.2d 767, 783 (Iowa 2011).

I would reverse the district court ruling denying the motion to suppress.