# IN THE SUPREME COURT OF IOWA

No. 19–0048

Submitted January 21, 2021—Filed April 16, 2021

**DAVID MICHAEL JOHNSTON,**

Appellant,

vs.

**IOWA DEPARTMENT OF TRANSPORTATION,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, Judge.

Driver appeals dismissal of his petition to review agency action revoking his driver's license as a habitual offender. **DECISION OF COURT OF APPEALS AND DISTRICT COURT ORDER AFFIRMED.**

Oxley, J., delivered the opinion of the court, in which Appel, Waterman, Mansfield, and McDonald, JJ., joined. McDermott, J., filed a dissenting opinion, in which Christensen, C.J., joined.

Christopher Stewart of Gribble, Boles, Stewart & Witosky Law, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Michelle E. Rabe, Assistant Attorney General, for appellee.

**OXLEY, Justice.**

Nearly twenty years ago we held that a deferred judgment counts as a "final conviction" for purposes of mandatory license revocation under Iowa Code section 321.209. *Schilling v. Iowa Dep't of Transp.*, 646 N.W.2d 69, 73 (Iowa 2002). Today, we reaffirm that holding with respect to administrative license revocations under Iowa Code sections 321.555 and 321.560. Our intervening decision in *State v. Tong*, 805 N.W.2d 599 (Iowa 2011) did nothing to erode *Schilling v. Iowa Department of Transportation.*

I.

Context matters. Criminal convictions have collateral consequences in a variety of contexts. Convictions are used, as here, to administratively suspend a person's privilege to drive. They are also used to criminalize otherwise lawful activity, such as possession of a firearm by a person with a felony conviction.

We have long recognized that "our interpretation of the term 'conviction' depend[s] upon the statutory context." *Daughenbaugh v. State*, 805 N.W.2d 591, 598 (Iowa 2011). This is not a new concept; nor is it limited to the statutes at issue in this case. *See, e.g., State v. Brodene*, 493 N.W.2d 793, 796 (Iowa 1992) (en banc) (addressing whether a guilty plea without judgment and sentencing constitutes a conviction for purposes of impeachment under Iowa Rule of Evidence 5.609(*a*) and explaining that "[w]hen used in a statute or rule, the word 'conviction' may have various meanings, depending on its purpose"); *State v. Kluesner*, 389 N.W.2d 370, 372 (Iowa 1986) (addressing "conviction" for purposes of restitution under Iowa Code section 910.2). Where a conviction is used to enhance a criminal penalty, we construe the term "conviction" with a relatively narrow and technical meaning. *Schilling*, 646 N.W.2d at 71. But where a conviction is used primarily to protect the public rather than as a

criminal punishment, we give the term a broader meaning. *See id.* (discussing cases). Thus, a conviction "may be final for one purpose and not for another." *Id.* (quoting *Maguire v. Fulton*, 179 N.W.2d 508, 511 (Iowa 1970)).[1]

The question of whether a person has a "final conviction" often arises when they receive a deferred judgment for a criminal offense. When a district court grants a deferred judgment, it places the defendant on probation and imposes civil penalties. Iowa Code § 907.3(1)(*a*) (2018). Once the defendant fulfills all the conditions of probation and pays all required fees, "the defendant shall be discharged without entry of judgment." *Id.* § 907.3(1)(*c*). The criminal record related to the deferred judgment is then expunged. *Id.* § 907.9(4)(*b*).

This case involves the use of a deferred judgment as one of the three underlying convictions counted by the Iowa Department of Transportation (IDOT) to revoke David Johnston's driver's license as a habitual offender. Johnston was arrested for operating while intoxicated (OWI) on December 23, 2011, and was convicted on March 8, 2012. Not quite six years later, Johnston was again arrested on November 12, 2017, and charged both with OWI and with eluding a police officer under Iowa Code section

---

[1]The dissent would not only overrule *Schilling*, but its entire line of well-established cases. "[I]nterpretation of a statute . . . [is an] area[] where historically we have been most reluctant to disturb precedent." *Youngblut v. Youngblut*, 945 N.W.2d 25, 39 (Iowa 2020) (citing cases). Further, despite what others say about legislative acquiescence and stare decision, we, on numerous occasions, have said: "The rule of stare decisis 'is especially applicable where the construction placed on a statute by previous decisions has been long acquiesced in by the legislature . . . .' " *Bd. of Water Works Trs. v. Sac Cnty. Bd. of Supervisors*, 890 N.W.2d 50, 61 (Iowa 2017) (omission in original) (quoting *In re Est. of Vajgrt*, 801 N.W.2d 570, 574 (Iowa 2011)); *see also Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 585 (Iowa 2017) ("We are adhering to our consistent prior interpretations of the Act since 1992—interpretations that have not been disturbed by the legislature—and the doctrine of stare decisis.").

321.279(1)(*a*).  Johnston was convicted of both offenses on April 19, 2018, and received a deferred judgment on the eluding charge.

Four days after Johnson was convicted of the two new charges, the IDOT notified Johnston it was revoking his driver's license under Iowa Code section 321.560 for garnering three enumerated convictions in a six-year period, making him a habitual offender under Iowa Code section 321.555(1) (defining "habitual offender" as "any person who has accumulated convictions for separate and distinct offenses . . . for which final convictions have been rendered").  Johnston requested a hearing on the revocation.  Throughout the agency proceedings, which included the initial hearing and two agency appeals, Johnston argued that the deferred judgment he received on the eluding charge was not a "final conviction" and could not be counted as one of the three predicate convictions under the habitual offender statute.  And throughout the agency proceedings, the IDOT rejected Johnston's argument based on our holding in *Schilling*.

Undeterred, Johnston filed a petition for judicial review of the IDOT's final agency decision on September 28, 2018.  The district court upheld the agency action, and Johnston continued his challenge by appealing to this court.  We transferred the appeal to the court of appeals.  Up to this point, Johnston had challenged *Schilling* as being eroded by our subsequent decision in *Tong*, a challenge that was uniformly rejected.  The court of appeals likewise "decline[d] to depart from *Schilling*," concluding "section 321.555(1) has the purpose of protecting the public."

Johnston added a twist to his argument in his brief on appeal.  He had successfully discharged the deferred judgment on May 6, 2019, just before his proof appellate brief was due.  So in that brief, he also seized on language in *Tong*, where we noted that "[w]e have on occasion adopted the compromise view that a deferred judgment remains a conviction until the

defendant successfully completes his or her term of probation." 805 N.W.2d at 603. Thus, Johnston argued he was entitled to relief since he has now successfully completed the terms of his probation.

We granted further review and now clarify that our holding in *Schilling* is alive and well.[2]

## II.

The Iowa Administrative Procedure Act provides a mechanism for judicial review of agency actions, the procedure Johnston utilized here. Iowa Code § 17A.19. In exercising judicial review of the agency's action, the district court acts as an appellate court, and its review is circumscribed by Iowa Code chapter 17A. *See Christiansen v. Iowa Bd. of Educ. Exam'rs*, 831 N.W.2d 179, 186 (Iowa 2013). To the extent Johnston challenges the legal effect of his deferred judgment, our review, as was the district court's, is for correction of errors at law. *See McMahon v. Iowa Dep't of Transp.*, 522 N.W.2d 51, 54 (Iowa 1994); *see also* Iowa Code § 17A.19(10)(*c*). In a contested case such as this, "the law limits court review to the agency's record." *McMahon*, 522 N.W.2d at 54. The court's role is to review the specific action taken by the agency, in this case, the IDOT's revocation of Johnston's driver's license as a habitual offender.

## III.

In *Schilling*, Schilling's driver's license was revoked under Iowa Code section 321.209 shortly after he received a deferred judgment for eluding the police. 646 N.W.2d at 70–71. Section 321.209 requires the IDOT to revoke the driver's license "upon receiving a record of the operator's

---

[2]Johnston raised two other arguments on appeal: (1) whether there was sufficient evidence to support the underlying eluding charge, and (2) whether the six-year period applies to the dates of offense or the dates of conviction. We choose not to address those issues, and "the court of appeals decision stands as final" as to both. *State v. Putman*, 848 N.W.2d 1, 7 (Iowa 2014).

conviction for [enumerated offenses, including eluding under Iowa Code section 321.279], when such conviction has become final." *Id.* at 70 (quoting Iowa Code § 321.209 (1999)). We concluded that statutory scheme "is designed for the protection of the public, not for punishment" and established a broad definition to determine whether the deferred judgment would be considered a "conviction [that] has become final" for purposes of section 321.209. *Id.* at 73. A defendant has a final conviction under the broad sense of the term if four elements are met:

> (1) A judge or jury has found the defendant guilty, or the defendant has entered a plea of guilty; (2) the court has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed; (3) a judgment of guilty may be entered if the person violates the terms of probation or fails to comply with the requirements of the court's order; and (4) the conviction has become final.

*Id.* Under the last element, "[a] conviction is final if the defendant has exhausted or waived any postorder challenge." *Id.*

Here, Johnston argued throughout the agency proceedings, and now on judicial review of those proceedings, that we limited *Schilling* in *Tong.* *Tong* involved the very different context of Iowa Code section 724.26, part of our criminal code, which prohibits possession of a firearm by "[a] person who is convicted of a felony." Iowa Code § 724.26(1). Tong had pleaded guilty to burglary, a felony, and received a deferred judgment. *Tong,* 805 N.W.2d at 600–01. In rejecting Tong's argument that he had not been "convicted of a felony" because he received a deferred judgment, we noted that our distinction between punitive and protective purposes from *Schilling* and earlier cases "may be of limited usefulness" where section 724.26 served both to protect the public and to punish the defendant, something of a hybrid. *Id.* at 602. We found it more salient that the statute applied both to convicted felons and to juveniles "adjudicated delinquent

on the basis of *conduct* that would constitute a felony if committed by an adult." *Id.* (emphasis added) (quoting Iowa Code § 724.26(1) (2009)). We concluded the general assembly intended "convicted of a felony" to apply more broadly where the statute focused on conduct rather than "convictions" in the strict sense of the word. *Id.*

We reinforced our conclusion with the fact that Tong had not completed the terms of his deferred judgment and was still on probation. *Id.* at 603. We noted that "[w]e have on occasion adopted the compromise view that a deferred judgment remains a conviction until the defendant successfully completes his or her term of probation." *Id.* (citing *State v. Birth,* 604 N.W.2d 664, 665 (Iowa 2000)). Ultimately, we held "a deferred judgment constitutes a conviction for purposes of section 724.26 where the defendant (as here) has not completed his term of probation." *Id.*

Johnston jumps on this language from *Tong* to argue for a different outcome here, pointing out in his appellate brief that he has now completed the requirements of his deferred judgment.

The court of appeals, as did both the agency and the district court before it, rightly rejected Johnston's argument that *Tong* limited *Schilling.* The court of appeals "decline[d] to depart from *Schilling,*" concluding section 321.555(1), like section 321.209, "has the purpose of protecting the public." It nonetheless considered Johnston's new argument, concluding that even under the *Tong* holding, Johnston could not prevail because he was still on probation for the deferred judgment at the time of the agency proceedings.

We took this case to clarify two points. First, lest there be any confusion, *Tong* did nothing to weaken *Schilling*'s application to statutes meant to protect the public. As we said at the beginning, context matters. Section 321.555 is not the hybrid type of statute we addressed in *Tong,*

which arose under our criminal code. Johnston's license was revoked administratively under authority granted to the IDOT in chapter 321, governing motor vehicles and laws of the road. The purpose of the habitual offender statute contained in section 321.555, similar to the revocation statute in section 321.209 at issue in *Schilling,* is to protect the public from drivers who garner three convictions for any of the serious offenses identified by the general assembly over a six-year period. That section 321.555(1) allows for a lengthier suspension of driving privileges than allowed in section 321.209 reflects nothing more than the general assembly's determination that a longer period of protection is needed from an offender who repeatedly commits the prohibited offenses. The district court, as did the court of appeals, properly applied the *Schilling* four-factor test to conclude Johnston's deferred judgment for eluding police was a "final conviction" for purposes of section 321.555(1) and supported the IDOT's revocation of Johnston's license.

Second, there is no basis in the record for addressing Johnston's separate *Tong* argument that his subsequent completion of probation changes things. That Johnston later successfully completed the terms of the deferred judgment in May 2019 makes it no less a final conviction at the time IDOT revoked his license, which is the agency action Johnston challenges and all we are reviewing in this chapter 17A judicial review proceeding. Given the state of the agency record, which did not and could not have included evidence that Johnston's deferred judgment was subsequently expunged in May 2019, there was no reason to consider Johnston's newfound *Tong* argument. *Cf. TLC Home Health Care, L.L.C. v. Iowa Dep't of Hum. Servs.*, 638 N.W.2d 708, 710 (Iowa 2002) ("Our review is limited 'to determining whether the district court correctly applied the law in exercising its section 17A.19(8) judicial review function.' " (quoting

*Ahrendsen ex rel. Ahrendsen v. Iowa Dep't of Hum. Servs.*, 613 N.W.2d 674, 676 (Iowa 2000) (en banc))).

As to our continued adherence to *Schilling,* unlike the dissent, we resist the temptation to interpret "conviction" under a different framework than we established in *Schilling.* At its core, the dissent's justification for overruling *Schilling* is simply a disagreement with the statutory interpretation made in that case. This is not the type of "manifest" error or "compelling reason" that supports overruling our precedent. *Bd. of Water Works Trs. v. Sac Cnty. Bd. of Supervisors,* 890 N.W.2d 50, 61–62 (Iowa 2017) (describing *McElroy v. State,* 703 N.W.2d 385, 395 (Iowa 2005), as involving the type of manifest error that supports overriding stare decisis, where *McElroy* overruled *Smith v. ADM Feed Corp.,* 456 N.W.2d 378 (Iowa 1990) (en banc) because experience putting the *Smith* majority's interpretation into practice, coupled with changes in federal law, revealed the problems with the interpretation).

The dissent claims we must read convictions to exclude deferred judgments in section 321.555 because the general assembly distinguished convictions from deferred judgments in section 321J.2(8) by placing them in different subsections. What the dissent fails to recognize, however, is that even though the general assembly placed deferred judgments and convictions in different subsections, it still treated a deferred judgment *the same as* a conviction for purposes of counting as a second or successive offense for sentencing and license revocation purposes under our OWI laws. *See* Iowa Code § 321J.2(8). Thus, the dissent is incorrect to characterize the separate subsections as an effort to *distinguish* convictions from deferred judgments. It may well be that the general assembly included separate subsections in 321J.2(8) as a belt-and-suspenders method of ensuring both are counted as second or subsequent

offenses.  *See, e.g., Atl. Richfield Co. v. Christian*, ___ U.S. ___, ___, 140 S. Ct. 1335, 1350 n.5 (2020) (" '[S]ometimes the better overall reading of the statute contains some redundancy.'  We find it much more likely that Congress employed a belt and suspenders approach to make sure that all [Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA)] lawsuits are routed to federal court than that Congress intended the reference to federal courts in § 113(h) to affect state courts."  (emphasis omitted) (citation omitted) (quoting *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U. S. ___, ___, 139 S. Ct. 873, 881 (2019))); *King v. Burwell*, 576 U.S. 473, 502, 135 S. Ct. 2480, 2498 (2015) (Scalia, J., dissenting) ("Lawmakers sometimes repeat themselves—whether out of a desire to add emphasis, a sense of belt-and-suspenders caution, or a lawyerly penchant for doublets (aid and abet, cease and desist, null and void)."); *Yates v. United States*, 574 U.S. 528, 562, 135 S. Ct. 1074, 1096 (Kagan, J., dissenting) ("The presence of both § 1519 and § 1512(c)(1) in the final Act may have reflected belt-and-suspenders caution: If § 1519 contained some flaw, § 1512(c)(1) would serve as a backstop.").[3]

*Schilling*'s interpretation of section 321.209 made the administrative revocation rules consistent with the sentencing and revocation rules in section 321J.2(8)—both count deferred judgments toward revocation.

---

[3]Even the dissent's go-to authority cautions that the surplusage canon "must be applied with judgment and discretion," because "[s]ometimes drafters *do* repeat themselves and *do* include words that add nothing of substance, either out of a flawed sense of style or to engage in the ill-conceived but lamentably common belt-and-suspenders approach."  Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 176–77 (2012) [hereinafter Scalia & Garner]; *see also State v. Thompson*, 954 N.W.2d 402, 417, (Iowa 2021) (explaining that "the 'shall not consider' language" in Iowa Code section 814.6A was "merely tautological surplusage"); Ethan J. Leib & James J. Brudney, *The Belt-and-Suspenders Canon*, 105 Iowa L. Rev. 735, 741–43 (2020) (explaining it is not uncommon for legislators to engage in redundant drafting out of an abundance of caution to ensure a subject is fully covered).

Given this consistency, we see no principled reason, and the dissent offers none, for revisiting our precedent. That the general assembly made it doubly clear that both convictions and deferred judgments count under section 321J.2(8) provides little, if any, indication that the general assembly intended the opposite result for license revocations under sections 321.209 or 321.555 merely because the general assembly did not mirror that language. It certainly does not reflect manifest error or a compelling need to ignore stare decisis.[4]

The district court's order dismissing Johnston's petition for judicial review is affirmed.

**DECISION OF COURT OF APPEALS AND DISTRICT COURT ORDER AFFIRMED.**

---

[4]To the extent the dissent claims that our refusal to overrule *Schilling* is itself unconstitutional as a violation of the separation of powers, we are aware of no court or commentator to even suggest that a court's adherence to stare decisis in cases involving statutory interpretation violates the separation of powers. Now-Justice Amy Coney Barrett's analogy to judges operating under a civil law system certainly does not. *See* Amy Coney Barrett, *Stare Decisis and Due Process*, 74 U. Colo. L. Rev. 1011, 1069–70 (2003). "It is well-known that civil-law systems do not [even] observe the rule of stare decisis." *Id.* at 1067 & n.221. We, of course, do not operate under a civil-law system. Thus, that civil-law judges who rely "on a long line of precedent rather than thinking independently through an issue of textual interpretation . . . might offend separation of powers," *id.* at 1069–70, says nothing of our doing the same. Nor does the dissent's reliance on Scalia and Garner's discussion of the differences between originalism and dynamic textual construction. Scalia and Garner explained that under the latter, "[w]hen government-adopted texts are given a new meaning, the law is changed; and changing written law, like adopting written law in the first place, is the function of the first two branches of government." Scalia & Garner, at 82. This was a comment on dynamic statutory construction, not adherence to stare decisis. Undeniably, *interpreting* written law, as we did in *Schilling*, is a judicial function. By applying our precedent, we have not "given a new meaning" to the same statutory language; we have done the exact opposite by giving effect to the same interpretation we gave to the same statutory language twenty years ago. If anyone is giving new meaning to the statute, it is the dissent.

The dissent's real disagreement with our adherence to *Schilling* is whether legislative acquiescence provides a strong or a weak basis for adhering to our prior statutory interpretations. This is a difference in judicial philosophy about canons of statutory construction, not a violation of the separation of powers.

Appel, Waterman, Mansfield, and McDonald, JJ., join this opinion. McDermott, J., files a dissenting opinion, in which Christensen, C.J., joins.

**McDERMOTT, Justice (dissenting).**

My dissent arises not from any disagreement with the majority's analysis of our precedent, but with the precedent itself. The text of Iowa's motor vehicle statutes, in my view, doesn't support the conclusion that Johnston's deferred judgment is a "final conviction" to count toward a habitual offender calculation, and I thus would reverse the district court's ruling.

What does "conviction" mean? It's a simple question without a simple answer. Our court over the years has often answered the question with a hedge: it depends. "Conviction," we've said, "has an 'equivocal meaning' that depends upon the context in which it is used." *Daughenbaugh v. State*, 805 N.W.2d 591, 597 (Iowa 2011) (quoting *State v. Hanna*, 179 N.W.2d 503, 507 (Iowa 1970)). We've distinguished between the use of the term "in its general and popular sense," with *conviction* meaning "the establishment of guilt independent of judgment and sentence," and alternatively "in its technical legal sense," with *conviction* referring to "a formal adjudication by the court and the formal entry of a judgment of conviction." *Id.* And how do we discern the difference in context? Well, it depends.

It depends on whether we think the word as used in a statute advances either a punishment purpose or a public safety purpose. *State v. Kluesner*, 389 N.W.2d 370, 372 (Iowa 1986). We've said it gets "a relatively narrow and technical meaning where it appears in statutes used to enhance punishment," yet it gets "a broader definition when protection of the public has been at stake." *Id.* And what if we can't make out a clear winner in the contest between punishment and public protection? Well, "[w]e have on occasion adopted the compromise view that a deferred

judgment remains a conviction until the defendant successfully completes his or her term of probation." *State v. Tong*, 805 N.W.2d 599, 603 (Iowa 2011) (citing *State v. Birth*, 604 N.W.2d 664, 665 (Iowa 2000)). So in cases of jump balls, a deferred judgment is considered a conviction—until it isn't.

And in this case, we have to answer not just what does "conviction" mean, but what does "final conviction" mean? In *Maguire v. Fulton*, we said the term "final conviction" doesn't have "a hard and fast definition." 179 N.W.2d 508, 511 (Iowa 1970). Hedging our bets once again, we said that it could be "final for one purpose and not for another," and that its meaning "depends upon the intention of the legislature." *Id.* In *McKeever v. Gerard*, we held that a person who received a deferred judgment had no right of appeal either as a direct appeal or as a petition for certiorari because there were no "conviction" in the district court. 368 N.W.2d 116, 119 (Iowa 1985) ("A defendant who elects to have the case eventually treated as if there was no conviction cannot simultaneously attack the case as if there had been one.") One can hardly fault the defendant in this case for bringing an appeal wondering what "final conviction" means as applied to this particular statute.

The court's pulling and stretching of the word "conviction" over the years is enough to make taffy makers pay homage. But it's unmoored, in my view, from the statutory text when read in its full context in this case. We're dealing in this case with the interpretation of words in Iowa's motor vehicle statutes. A reader will find nothing in these statutes that say the word "conviction" experiences a metamorphosis depending on whether judges think the word advances a punishment purpose or a public safety purpose.

Because we're interpreting words in a statute, our analysis in this case begins—and I would argue, ends—with what the text of the statute

says and fairly implies. *See Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020) (stating that when interpreting a law, the words of the text are of paramount importance); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 16, 33 (2012) [hereinafter Scalia & Garner, *Reading Law*]. Here's the first statute requiring our interpretation in this case, the motor vehicle habitual offender law:

> As used in this section and sections 321.556 through 321.562, "habitual offender" means any person who has accumulated convictions for separate and distinct offenses described in subsection 1, 2, or 3, committed after July 1, 1974, for which final convictions have been rendered, as follows:
>
> 1. Three or more of the following offenses, either singularly or in combination, within a six-year period:
>
> . . . .
>
> 2. Six or more of any separate and distinct offenses within a two-year period in the operation of a motor vehicle . . . .

Iowa Code § 321.555 (2018). Johnston challenges that deferred judgments shouldn't count as "final convictions [that] have been rendered," and thus that he shouldn't have been deemed a habitual offender.

Deferred judgments are covered in Iowa Code section 907.3. With a deferred judgment, "a plea of guilty, a verdict of guilty, or a special verdict upon which a judgment of conviction may be rendered" are put off (deferred) by the court during a probationary period. Iowa Code § 907.3. If at the conclusion of the probationary period the defendant has complied with the terms of probation and paid any fines, "the defendant shall be discharged without entry of judgment." *Id.* § 907.3(1)(*c*). The legislature has limited the situations in which courts can enter deferred judgments. *See id.* § 907.3(1)(*a*)(1)–(14). The legislature has also limited the number

of times a defendant can receive a deferred judgment in the course of a lifetime; like eyeballs, you only get two. *See id.* § 907.3(1)(*a*)(2).

A judge's workbench is stocked with time-forged interpretive tools. We construe the text of a statute as a whole. *Doe,* 943 N.W.2d at 610; Scalia & Garner, *Reading Law,* at 167. Words and phrases are presumed to bear the same meaning throughout a text. *State v. Richardson*, 890 N.W.2d 609, 619 (Iowa 2017); Scalia & Garner, *Reading Law,* at 170. A material change in terms suggests a change in meaning. *Id.* We interpret every word and every provision of a statute to give it effect, if possible. *Maguire,* 179 N.W.2d at 510; Scalia & Garner, *Reading Law,* at 174.

Applying these principles of interpretation, we see that in our motor vehicle laws the legislature treats deferred judgments separate and distinct from convictions. In Iowa's operating while intoxicated statute, Iowa Code chapter 321J, the legislature separately addressed convictions and deferred judgments in explaining how the calculation of prior violations works:

> 8. In determining if a violation charged is a second or subsequent offense for purposes of criminal sentencing or license revocation under this chapter:
>
> *a.* Any conviction or revocation deleted from motor vehicle operating records pursuant to section 321.12 [i.e., that were deleted because the offenses happened more than twelve years ago] shall not be considered as a previous offense.
>
> *b.* Deferred judgments entered pursuant to section 907.3 for violations of this section shall be counted as previous offenses.
>
> *c.* Convictions or the equivalent of deferred judgments for violations in any other states under statutes substantially corresponding to this section shall be counted as previous offenses. . . . Each previous violation on which conviction or deferral of judgment was entered prior to the date of the violation charged shall be considered and counted as a separate previous offense.

Iowa Code § 321J.2(8)(*a*)–(*c*).[5]    If the legislature intended the word
"conviction" to include deferred judgments, it would have been pointless
for the legislature to have written a subsection *b* stating that deferred
judgments count as prior offenses since subsection *a* already stated that
convictions count as prior offenses.  Similarly, in subsection *c*, it would
have been pointless for the legislature to state that "[e]ach previous
violation on which conviction *or deferral of judgment* was entered prior to
the date of the violation charged shall be considered and counted as a
separate previous offense" if deferred judgments were already included in
the meaning of conviction.  *Id.* § 321J.2(8)(*c*) (emphasis added).

The legislature made this distinction between "conviction" and
"deferred judgment" equally clear in the deferred judgment statute itself
when it repeated otherwise identical subsections to differentiate prior
convictions from prior deferred judgments:

> (b) If the defendant has previously been convicted of a
> violation of section 321J.2, subsection 1, or a violation of a
> statute in another state substantially corresponding to section
> 321J.2, subsection 1.

> (c) If the defendant has previously received a deferred
> judgment or sentence for a violation of section 321J.2,

---

[5]Iowa's operating while intoxicated provisions previously resided in chapter 321 until given their own chapter (321J) in 1986.  *Compare* Iowa Code § 321J.2 (1987), *with* Iowa Code § 321.281 (1985); *see also* 1986 Iowa Acts ch. 1220, § 37 ("Section 321.555, subsection 1, paragraph b, Code 1985, is amended to read as follows: b.  Operating a motor vehicle in violation of section ~~321.281~~ 321J.2.").  The distinction between deferred judgments and convictions in section 321J.2 was likewise found in the operating while intoxicated provisions when they resided in chapter 321:

> No conviction for, deferred judgment for, or plea of guilty to, a violation of this section which occurred more than six years prior to the date of the violation charged shall be considered in determining that the violation charged is a second, third or subsequent offense.  For the purpose of determining if a violation charged is a second, third, or subsequence offense, a deferred judgment pursuant to section 907.3 for an offense under this section shall be counted as a previous violation.

Iowa Code § 321.281(2)(*c*) (1985).

subsection 1, or for a violation of a statute in another state substantially corresponding to section 321J.2, subsection 1.

Iowa Code § 907.3(1)(*a*)(6)(b)–(c). We must conclude the legislature referred to "conviction" and "deferred judgment" as distinct concepts because these subsections contain the exact same wording except the words "has previously *been convicted of* a violation" in subsection (b) were changed to "has previously *received a deferred judgment or sentence for* a violation" in subsection (c). *Id.* (emphasis added). Again, if "conviction" included deferred judgments, it would have been a pointless exercise for the legislature to have written subsection (c) stating that prior *deferred judgments* count as violations since subsection (b) already stated that prior *convictions* count as violations.

We don't read statutes to imply that the legislature wasted its time and ink by including redundant provisions. Canons of statutory interpretation require that every word and every provision in a statute is to be given effect, if possible, and *not* deemed mere surplusage. *Bribriesco-Ledger v. Klipsch*, ___ N.W.2d ___, ___ (Iowa 2021). No word should be ignored, and no provision should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence. Scalia & Garner, *Reading Law*, at 174; *accord United States v. Butler*, 297 U.S. 1, 65, 56 S. Ct. 312, 319 (1936) ("These words cannot be meaningless, else they would not have been used."). Our court has relied on this principle— that we do not interpret the legislature's language in statutes as meaningless or redundant—throughout our jurisprudence. *See, e.g., In re Chapman*, 890 N.W.2d 853, 857 (Iowa 2017); *Iowa Auto Dealers Ass'n v. Iowa Dep't of Revenue*, 301 N.W.2d 760, 765 (Iowa 1981).

I recognize this analysis clashes with our interpretation in *Schilling v. Iowa Department of Transportation*, which dealt with a prior-offense

calculation in another motor vehicle statute where that statute, like section 321.555 referred to "conviction" but not "deferred judgment." 646 N.W.2d 69, 71–73 (holding that the term "conviction" included the unexpressed "deferred judgment" in calculating prior offenses for license revocation under section 321.209). But our court's interpretation of "conviction" in *Schilling* as including deferred judgments clashes with our interpretative canons. Viewing "conviction" to include "deferred judgment" makes superfluous the legislature's discrete treatment of these terms. If the legislature meant the same thing, we expect it would have said the same thing. The variation in terms suggests a variation in meaning, and thus "conviction" as used in section 321.555 shouldn't be read to include a deferred judgment. *State v. Paye*, 865 N.W.2d 1, 7 (Iowa 2015) ("When the same term appears multiple times in the same statute, it should have the same meaning each time.") Unlike other sections of our motor vehicle statutes that speak directly of both convictions and deferred judgments, section 321.555 speaks only of convictions. "The principle that a matter not covered is not covered is so obvious that it seems absurd to recite it." Scalia & Garner, *Reading Law*, at 93.

Why would we assume the legislature meant to differentiate convictions and deferred judgments for prior offense calculations in other motor vehicle statutes but not in section 321.555? We construe the text of a statute as a whole, with words and phrases presumed to bear the same meaning throughout a text. *Richardson*, 890 N.W.2d at 619; Scalia & Garner, *Reading Law*, at 167–70. The legislature's failure to add the phrase "deferred judgment" to section 321.555 doesn't mean judges should reach for pens and start adding words to the statute that we know the legislature is perfectly capable of adding itself. As Justice Brandeis

put the point: "To supply omissions transcends the judicial function." *Iselin v. United States*, 270 U.S. 245, 251, 46 S. Ct. 248, 250 (1926).

The majority bows to *Schilling*'s erroneous interpretation based on stare decisis. But we have said stare decisis doesn't prevent the court "from reconsidering, repairing, correcting or abandoning past judicial announcements when error is manifest, including error in the interpretation of statutory enactments." *Miller v. Westfield Ins.*, 606 N.W.2d 301, 306 (Iowa 2000) (en banc). Our interpretive error is manifest; it's difficult to imagine how the legislature could draft a clearer separation between "conviction" and "deferred judgment" than the parallel construction provided in section 321J.2(8). Instead of plying our holding in *Schilling* with smelling salts and declaring it "alive and well," we should acknowledge its fatal flaws and administer last rites.

Our adherence to an erroneous interpretation of "conviction" in the name of upholding our own precedent over the text of the statute violates the separation of powers. Under the separation of powers, the judicial branch holds "the 'province and duty . . . to say what the law is' in particular cases and controversies." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218, 115 S. Ct. 1447, 1453 (1995) (omission in original) (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)). Where the legislature has spoken in its statutes, the court's role is interpretation of what the text of those statutes provides. The legislature's text must serve as our higher guide when it conflicts with one of our precedents. "When government-adopted texts are given a new meaning, the law is changed; and changing written law, like adopting written law in the first place, is the function of the first two branches of government"—elected legislators and elected executive officials. Scalia & Garner, *Reading Law*, at 82–83.

Legislative statutes outrank judicial precedents when the two are in conflict, and a court may not prefer its own erroneous interpretation of a statute over the statute itself. "[I]f the Court encounters a decision that is demonstrably erroneous—i.e., one that is not a permissible interpretation of the text—the Court should correct the error, regardless of whether other factors support overruling the precedent." *Gamble v. United States*, 587 U.S. ___, ___, 139 S. Ct. 1960, 1984 (2019) (Thomas, J., concurring). Adhering to a demonstrably erroneous precedent "is tantamount to *making* law" and "both disregards the supremacy of the Constitution and perpetuates a usurpation of the legislative power." *Id.* When the judiciary usurps legislative power in this manner, it violates the constitutional separation of powers. *See Garg v. Macomb Cnty. Cmty. Mental Health Servs.*, 696 N.W.2d 646, 659 n.10 (Mich. 2005) (reciting principles supporting stare decisis but nonetheless overruling an earlier case's interpretation of statutory text since "so also are these values promoted by the separation of powers doctrine, which holds that it is the responsibility of the judiciary to respect the intentions of the Legislature by giving faithful meaning to the words of the law"); *see also* Amy Coney Barrett, *Stare Decisis and Due Process*, 74 U. Colo. L. Rev. 1011, 1069–70 (2003) (discussing circumstances where "reliance on the precedent might offend separation of powers if the judge might have come out a different way based on independent analysis of the text").

The majority's claim that we should *assume* our prior interpretation was correct because no Iowa legislatures since our decision in *Schilling* have amended the statute to reject our construction of "conviction" in *Schilling* offers a hollow reason to continue to follow an erroneous construction. "The court is always free to correct its own mistakes, and legislative inaction is not a bar to doing so." *State ex rel. Iowa Dep't of*

*Health v. Van Wyk*, 320 N.W.2d 599, 607 (Iowa 1982) (McCormick, J., dissenting) (citing 2A Norman J. Singer, *Statutes and Statutory Construction* § 49.10 (4th ed. C. Sands 1973)). "Legislative inaction has been called a 'weak reed upon which to lean' and a 'poor beacon to follow' in construing a statute." 2B Norman J. Singer, *Statutes and Statutory Construction* § 49:10, at 112–115 (6th ed. 2000).

Justice Scalia excoriated the so-called "legislative acquiescence" justification our majority relies on today. *Johnson v. Transp. Agency, Santa Clara Cnty., Cal.*, 480 U.S. 616, 671, 107 S. Ct. 1442, 1472 (1987) (Scalia, J., dissenting). He maintained that a legislative-inaction-confirms-we-got-it-right assumption "haunts" judicial opinions and urged it "should be put to rest." *Id.* "It is based, to begin with, on the patently false premise that the correctness of statutory construction is to be measured by what the current Congress desires, rather than by what the law as enacted meant." *Id.* "To make matters worse, it assays the current Congress' desires *with respect to the particular provision in isolation*," thus ignoring the legislative process's give-and-take required to create the "total legislative package" in which the isolated provision happens to reside. *Id.* The Constitution "creates an inertia" through its "complicated check on legislation" that, according to Scalia, "makes it impossible to assert with any degree of assurance" that inaction represents approval of the status quo. *Id.* at 672, 107 S. Ct. at 1472 (quoting The Federalist No. 62, at 378 (Clinton Rossiter ed., 1961)). "[O]ne must ignore rudimentary principles of political science to draw any conclusions regarding [a current legislature's] intent from the *failure* to enact legislation." *Id.* at 671–72, 107 S. Ct. at 1472.

Judge Easterbrook describes potentially antidemocratic consequences when courts base holdings on lawmakers' failure to act in response to a court's interpretation of a statute:

> For a long time judges have said that statutes are different from common law and constitutional law. Courts should attach a meaning to a statute, then let Congress act or not; a court could only confuse Congress and increase uncertainty by revisiting the subject; Congress can correct mistakes. I doubt that this is so. . . . It assumes, in other words, that as soon as the judges have spoken, the decision of the past ceases to matter, and the only question is what the sitting Congress wishes. This simply denies the purpose of the enterprise: to enforce the decisions of a prior Congress.
>
>     . . . Today's Congress may leave in place an interpretation of a law simply because today's coalitions are different. The failure of a different body to act hardly shows that the interpretation of what an earlier one did is 'right.'

Frank H. Easterbrook, *Stability and Reliability in Judicial Decisions*, 73 Cornell L. Rev. 422, 426–27 (1988) (footnote omitted). The mere fact that a legislature *could* take action "is no excuse for failing to overrule a statutory precedent of ours that is clearly wrong, for the realities of the legislative process often preclude readopting the original meaning of a statute that we have upset." *Clark v. Martinez*, 543 U.S. 371, 402, 125 S. Ct. 716, 736 (2005) (Thomas, J., dissenting). Our interpretation should be based on what the text says and fairly implies, not on our suppositions about what a legislature's inaction might mean.[6]

---

[6]Even if legislative acquiescence really did provide a grounding for a particular interpretation of "conviction," there seems to be plenty of "acquiescence" to go around in this case. In 1897, in *Hackett v. Freeman*, 103 Iowa 296, 298–300, 72 N.W. 528, 529 (1897), we analyzed the definition of "conviction" in a precursor statute to what's now Iowa Rule of Evidence 5.609. We defined "conviction" to include "both the ascertaining of the guilt of the accused and *judgment thereon by the court*." *Id.* at 299–300, 72 N.W. at 529 (emphasis added). Over eighty years later, in discussing the very subject of legislative acquiescence to our definition of "conviction" in *Hackett*, we said: "Considering the long ascendency of that pronouncement without legislative dissent, it is fair to presume that the court there accurately discerned the legislature's intent." *State v. Ege*, 274 N.W.2d 350, 356 (Iowa 1979) (en banc). The definition of "conviction" we deemed cemented by

Other infirmities exist in *Schilling*'s foundation.  In *Schilling* we cited a definition of conviction from a 1965 Ohio Supreme Court case, which in turn cited a definition of conviction from a law dictionary from 1940, defining conviction as "that legal proceeding which ascertains the guilt of the party upon which the sentence or judgment is founded."  *Schilling*, 646 N.W.2d at 71 (quoting *State v. Brantley*, 205 N.E.2d 391, 393 (Ohio 1965) (quoting *Bouvier's Law Dictionary* (Baldwin's Century ed. 1940))).  We quoted the Ohio Supreme Court's summary of that definition to say that a conviction is "a legal ascertainment that an offense has been committed." *Id.* (quoting *Brantley*, 205 N.E.2d at 393).  But that summary omitted the dictionary definition's concluding phrase: "upon which *the sentence or judgment* is founded."  *Id.* (emphasis added) (quoting *Brantley*, 205 N.E.2d at 393).  If there's a "sentence or judgment" that must be found in the legal proceeding—and with a deferred judgment, there's neither a sentence nor a judgment—then a deferred judgment wouldn't constitute a conviction even under the particular definition we cited in *Schilling*.

Where standard interpretive tools provide a simple path for interpreting "conviction" in section 321.555, we've installed unnecessary complexity.  Setting aside that it's untethered from the text, the punitive-vs.-public safety examination adopted in *Schilling* depends too much, in my view, on the location one chooses to stand in observing the object. Most criminal penalties both punish harmful conduct and protect the public from harmful conduct simultaneously.  The textual approach required in this case comes with the added benefit of avoiding such an exercise.

---

legislative acquiescence some forty years ago required the court's entry of a *judgment*— the key feature absent with a *deferred judgment*.

Our court has long recognized that "the principles of stare decisis and legislative acquiescence in combination 'are not absolute.'" *Bd. of Water Works Trs. v. Sac Cnty. Bd. of Supervisors*, 890 N.W.2d 50, 61 (Iowa 2017) (quoting *McElroy v. State*, 703 N.W.2d 385, 395 (Iowa 2005)). Our holding in *Schilling*—upon which the holding in this case relies completely—was in error. And we possess "not only the right but the duty to change a past decision if it is erroneous." *State v. Johnson*, 257 Iowa 1052, 1056, 135 N.W.2d 518, 521 (1965). The text of section 321.555 receives its correct interpretation by differentiating a deferred judgment from a conviction. I thus respectfully dissent from the majority's opinion that relies on our erroneous decision in *Schilling* that held otherwise, and would reverse the district court's order on judicial review and vacate the revocation of Johnston's driving privileges.

Christensen, C.J., joins this dissent.