# IN THE COURT OF APPEALS OF IOWA

No. 22-1780
Filed January 24, 2024

**DAVID A. MUHR and CHRISTINE L. MICKEL,**
    Plaintiffs-Appellants,

**vs.**

**RACHELLE E. WILLENBORG,**
    Defendant-Appellee.

_____

    Appeal from the Iowa District Court for Carroll County, Christopher C. Polking, Judge.

    Two cotenants challenge the district court's hybrid partition of a family farm.
**AFFIRMED.**

    James R. Van Dyke of the Law Office of James Van Dyke, P.C., and Jessica L. Morton of Bruner, Bruner, Reinhart & Morton, LLP, Carroll, for appellant.

    Eric J. Eide of Nyemaster Goode, P.C., Ames, and Ryan Stefani of Nyemaster Goode, P.C., Des Moines, for appellee.

    Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**BULLER, Judge.**

In Iowa, we've waffled on our preferences in partitioning family farms, bouncing between partition in kind and partition by sale.[1] *See* Iowa Code § 651.30 (noting current legislative preference for partition in kind); *Spies v. Prybil*, 160 N.W.2d 505, 507 (Iowa 1968) (tracing change in statutory preference from partition in kind to partition by sale). Now, we must decide if a district court can order a hybrid of both remedies, as it did with a Carroll County farm owned by cotenants David Muhr, Christine Mickel, and Rachelle ("Shelly") Willenborg. Muhr and Mickel requested the farm be sold in its entirety, while Willenborg sought physical division of her share of the land. Applying a 2018 statute, the district court ordered a hybrid partition—dividing the land partially in kind and partially by sale—with an owelty payment from Willenborg to balance the ledger.

---

[1] We use some terms of art throughout this opinion. A "partition in kind" is "a court-ordered division of property subject to partition into physically distinct and separately titled parcels." Iowa Code § 651.1(8) (2021). A "partition by sale" is "a court-ordered sale of property subject to partition." *Id.* § 651.1(7). "Owelty" is "an equitable remedy in a partition action used to equalize the value of the property a party receives through the payment of a sum of money from a recipient of a higher value property to the recipient of a lower value property." *Id.* § 651.1(6). And "heirs property" is real property held by tenants in common that meets the following criteria before a tenant petitions for partition:

> a. There is not a recorded agreement that binds all of the cotenants that governs the partition of the property.
> b. One or more of the cotenants acquired title from a living or deceased relative.
> c. Any of the following apply:
>> (1) Twenty percent or more of the interests are held by cotenants who are relatives.
>> (2) Twenty percent or more of the interests are held by an individual who acquired title from a living or deceased relative.
>> (3) Twenty percent or more of the cotenants are relatives.

*Id.* § 651.1(5).

Muhr and Mickel contend the district court erred in its application of the statute in two ways. First, they assert the district court lacked authority to order a hybrid partition. And second, they claim the court erred in the "great prejudice" inquiry required under a subchapter specific to heirs property. Iowa Code §§ 651.30, .31. They also request attorney fees. While we find an error in the district court's application of the statute, its ultimate division of the property was statutorily sound, equitable, and practicable. We affirm the district court's order and deny Muhr and Mickel's fee request.

## I.      Background Facts and Proceedings

After their mother's death around twenty years ago, Muhr, Mickel, Willenborg's husband, and two other siblings inherited 273 acres of Carroll County farmland as cotenants. From then on, the siblings shared in paying taxes and insurance on the land. Willenborg's husband also helped farm the land, as he had since high school.

Willenborg's husband passed away unexpectedly in February 2020, and she inherited his share. Muhr and Mickel commissioned an appraisal, which determined the market value of the property was $2,382,750 as of October 2020.

By the next November, only Muhr, Mickel, and Willenborg's interests in the land remained. The three discussed selling or buying their respective shares, but they could not come to an agreement. Based on this lack of consensus, Muhr and Mickel petitioned the district court to partition the farmland by sale in November 2021. Willenborg answered the petition, asking the district court to partition the land in kind. Both parties agreed the land was heirs property subject to

subchapter III of Iowa Code chapter 651.  *See id.* § 651.27.  And neither party requested the opportunity to make a cotenant buyout.  *Id.* § 651.29.

The district court appointed a referee to evaluate the farmland and make a recommendation on how to divide it.  The referee had an agricultural business background—with more than forty years of experience as a farm manager and more than thirty years as a rural appraiser—and had served as a referee for partition actions before.  Muhr and Mickel commissioned an updated appraisal from the same appraiser used in 2020, who found the market value of the property was $3,221,400 as of January 2022.  The parties and the referee agreed to this valuation for purposes of these proceedings.  Based on the appraisal, the referee endeavored to physically divide the property such that each party's parcel was worth $1,073,800.

But the referee found splitting the property three ways impractical because of the farm's unusually "diverse topography," including "two open ditches that dissect the west half of the property and the southeast part of the property."  As the referee explained it, these ditches were "not crossable with vehicles or farm equipment," making "access to certain parts of the farm . . . extremely limited or entirely impossible."  As a result, the referee concluded a three-way division would not work "[d]ue to the lack of access to some parts of the farm and the potential farming inefficiencies[.]"  Instead, the referee recommended a two-way split, dividing the land into a "North Parcel" and a "South Parcel," as depicted on diagrams included with the referee's filed report and reproduced below.  *See id.* § 651.16(4) ("The referee shall file a report with the court that details the referee's proposed division of the property subject to partition in kind.").




Aerial Map-North Parcel    Aerial Map-South Parcel

The referee reasoned "[t]his division would give good access to both parcels and would be more advantageous for soil conservation practices and farming efficiencies." The South Parcel was 95.62 gross acres valued at $1,125,000; roughly one-third of the entire property. And the North Parcel was 177.38 gross acres valued at $2,096,400—roughly two-thirds of the entire property.

The referee proposed the court award the South Parcel to Willenborg and the North Parcel to Muhr and Mickel. He also suggested Willenborg make a one-time owelty payment of $25,600 each to Muhr and Mickel to offset the discrepancy between the proportional values of the North and South Parcels. In the referee's opinion "creating the two parcels as described would represent an equitable and practical division of the property." He also recommended the court order the North Parcel be sold at public auction, in line with Muhr and Mickel's wishes. And the referee noted the North Parcel could be further split so Muhr and Mickel could each sell their own parcel, though doing so could "result in farming inefficiencies and may make it more difficult to implement soil conserving measures."

Muhr and Mickel objected to the referee's recommendation, again seeking partition of the entire property by sale. Willenborg agreed with the referee. At an October 2022 partition hearing, the referee testified he physically inspected the property "maybe five times total." And he reiterated "[t]he two ditches . . . are not crossable. They're too deep. You can build access, but you're probably going to spend a lot of money to do that." When questioned as to the practicality of his proposed division, he opined, "I think considering the farm it's about as practical as you're going to get." And he concluded that it would not "diminish the value of the property dividing it this way." Willenborg testified about her sentimental attachment to the farm, explaining that her late husband "loved [the land] dearly," that she had walked the beans herself, and both she and her husband wished to pass the land to their children after his death.

The district court ordered the land be divided partially in kind and partially by sale, consistent with the referee's recommendation. The court also ordered Willenborg to make the owelty payments recommended by the referee. The court further ordered the North Parcel be sold at auction upon completion of the necessary surveys. Muhr and Mickel appeal.

## II.     Standard of Review

Actions to partition property are tried in equity and reviewed de novo. *Grout v. Sickels*, 985 N.W.2d 144, 149 (Iowa 2023) (citing Iowa Code § 651.2). We give weight to the district court's fact-finding, especially on credibility issues, but we are

not bound by it. *Id.* As for statutory interpretation, our review is for correction of errors at law. *Garrison v. New Fashion Pork LLP*, 977 N.W.2d 67, 76 (Iowa 2022).

### III.     Analysis

Muhr and Mickel claim the district court's hybrid partition of the farmland was not allowed by statute. And they assert the court failed to properly evaluate whether "great prejudice" would result from partition. Last, they request attorney fees. We tackle each argument separately, walking through Iowa's partition history and the structure of chapter 651 along the way.

### A.     Authority for Hybrid Partitions

Muhr and Mickel first argue the district court exceeded its statutory authority when it partitioned the land partially in kind and partially by sale. They specifically assert the language and organization of Iowa Code chapter 651 do not permit a hybrid partition of heirs property. To address this claim, we start with the text, history, and intended purpose of chapter 651.

### 1.     Text, History, and Purpose of Iowa Partition Law

Iowa's partition history has peaks and valleys. Historically, our statutes favored partitions in kind. *See Prybil*, 160 N.W.2d at 507. But partitions by sale occurred under this regime, despite the preference otherwise, when physically dividing the property would result in great prejudice. *Branscomb v. Gillian*, 7 N.W. 523, 523 (Iowa 1880) (finding a partition in kind "would be manifestly inequitable"). And courts ordered hybrid partitions. *See Nehls v. Walker*, 244 N.W. 850, 851 (Iowa 1932) (recognizing "partial partition" as an option), *cf. Newhall v. Roll*, No. 14–1622, 2015 WL 5965205, at *4 (Iowa Ct. App. Oct. 14, 2015), *vacated on other grounds*, 888 N.W.2d 636 (Iowa 2016). This flexibility followed the

traditional role of equity courts to "vary, qualify, restrain, and model the remedy, so as to suit it to mutual and adverse claims, controlling equities, and the real and substantial rights of all the parties." 1 Joseph Story, *Commentaries on Equity Jurisprudence* § 28, at 27 (Hilliard, Gray & Co. 1836).

At least on paper, the 1943 Iowa Rules of Civil Procedure changed the preference for partition in kind to a preference for partition by sale. *Prybil*, 160 N.W.2d at 507–08. This shift placed Iowa in an extreme minority, *see Newhall*, 888 N.W.2d at 641, and prompted criticism. *See* Phyliss Craig-Taylor, *Through A Colored Looking Glass: A View of Judicial Partition, Family Land Loss, and Rule Setting*, 78 Wash. U. L.Q. 737, 759 (2000) (concluding that "Iowa seemed to apply a pecuniary loss standard" and that such a standard produced "inconsistencies and potential unfairness"); Thomas W. Mitchell, *Reforming Property Law to Address Devastating Land Loss*, 66 Ala. L. Rev. 1, 28–36 (2014) (covering how partition-by-sale regimes have had a "devastating" impact on poor and middle class families across different racial and ethnic backgrounds). Despite the change to the rules, however, Iowa courts retained equitable authority to create hybrid partitions. *See* Iowa Code § 651.3 (2017) ("When partition can be conveniently made of part of the premises but not of all, one portion may be partitioned and the other sold, as provided in this chapter."); Iowa R. Civ. P. 1.1201(3) (2017); *Anderson v. Johnson*, No. 03–2045, 2004 WL 2804854, at *2 (Iowa Ct. App. Dec. 8, 2004) (affirming the district court's order awarding a hybrid partition).

Iowa's approach to partition shifted again in 2018, when the General Assembly enacted partition legislation now codified at Iowa Code chapter 651 (2021). *See* 2018 Iowa Acts ch. 1108. The chapter appears to be a

direct response to supreme court decisions that reversed our court's approval of partitions in kind for family farms. *See generally Wihlm v. Campbell*, 906 N.W.2d 185 (Iowa 2018) (memo) (depublished); *Newhall*, 888 N.W.2d 636.

The new Iowa Code chapter 651 contains three subchapters: (I) Definitions, (II) General Provisions, and (III) Special Provisions for Partition of Heirs Property. Subchapter II largely codified the existing partition regime, including a preference for partition by sale and permitting hybrid partitions. *See* Iowa Code §§ 651.2 (preference for partition by sale), .11 (permitting hybrid partitions).

Subchapter III provided special provisions for "heirs property." *See id.* § 651.1 (defining the term). And it required the district court to generally proceed with partitions of heirs property in a manner somewhat different than subchapter II. *Id.* § 651.27. But subchapter III also provided that subchapter II's provisions applied whenever they did not "conflict" with subchapter III. *Id.*

Under subchapter III's process, a district court facing partition of heirs property must file an initial decree and appoint a referee, who must submit an appraisal that sets the fair market value of the property. *Id.* § 651.28. Next, cotenants who desire partition in kind have forty-five days to "buy out" the property interest of their adverse cotenants based on the appraised value of their ownership share. *Id.* § 651.29. If the conflict is not resolved through a buy-out, the court must partition the property in kind, unless doing so would result in "great prejudice to the cotenants as a group." *Id.* §§ 651.30, .31 (listing factors for the court to consider in determining great prejudice).

Our court has concluded subchapter III of chapter 651 reinstated Iowa's preference for partition in kind when it comes to heirs property. *See Bruhn Farms*

*Joint Venture v. Kuehl*, No. 21-1707, 2022 WL 5078275, at *4 (Iowa Ct. App. Oct. 5, 2022). The statutory scheme shows our legislature intended heirs property be afforded special protection against partitions by forced judicial sale—a process in which family farmers could be dispossessed of the land they worked or for which they held close sentimental attachment. *Cf. id.* at *4–5. And the supreme court has already determined the heirs-property statute abrogated our rules (and case law relying on the rules) to the extent they differ from the statutory scheme. *See* Iowa Supreme Ct. Order, *In the Matter of Rescinding Division XII of the Iowa Rules of Civil Procedure Relating to Partition of Real and Personal Property, Rules 1.1201-1.1228* (May 21, 2018), *available at* https://www.iowacourts.gov/static/media/cms/052118_Order_Rescind_Div_XII_D0657CB896028.pdf.

### 2. Partition Law Applied to this Case

With that context in mind, we turn to this case. Muhr, Mickel, and Willenborg agreed that the Carroll County farmland was heirs property. And they did not opt to resolve the partition action by buy-out. This takes us to Iowa Code section 651.30, which directs "the court shall order the heirs property to be partitioned in kind unless the court, after consideration of all facts pursuant to section 651.31, finds that partition in kind will result in great prejudice to the cotenants as a group."

Muhr and Mickel contend the district court erred at this point when it agreed with the referee the land could not practicably be partitioned into three equal parcels and ordered a hybrid partition. Their argument is essentially that the district court could not rely on subchapter II to fill in the gaps of subchapter III,

because the legislature intended partition in kind and partition by sale to be mutually exclusive remedies for heirs property.

We agree with Muhr and Mickel, but only to an extent. The statute provides the district court "shall order" partition in kind unless it finds "great prejudice." *See* Iowa Code § 651.30; *see also id.* § 4.1(30)(a) ("The word 'shall' imposes a duty."). From the text of the statute, we determine the General Assembly barred the district court from partitioning heirs property by sale, at any percentage, unless there would be great prejudice to the cotenants as a group. In other words, great prejudice is a condition precedent to any partition by sale or hybrid partition.

We part ways with Muhr and Mickel over whether the district court's only option was to partition the property wholly by sale after accepting the referee's report that partition wholly in kind was not feasible. Muhr and Mickel point to the final section of subchapter III and argue this section requires partition wholly by sale:

> 1. If the court orders the heirs property partitioned in kind, the proceedings shall be governed by the procedures set forth in subchapter II that are applicable to a partition in kind.
> 2. If the court orders the heirs property partitioned by sale, the proceedings shall be governed by the procedures set forth in subchapter II applicable to a partition by sale.

*Id.* § 651.32. They argue that, while hybrid partitions are permitted in section 651.11 (part of subchapter II), section 651.32 eliminates that remedy for heirs property under subchapter III.

Although Muhr and Mickel do not use the language of statutory construction, their argument requires reasoning by negative inference: they read section 651.32 as the total universe of permissible outcomes and infer any remedy not expressly

mentioned in that section is unavailable. *See Struve v. Struve*, 930 N.W.2d 368, 376–77 (Iowa 2019) (explaining the fancy Latin phrase for this argument, *expressio unius est exclusio alterius*, means "the express mention of one thing implies the exclusion of others not so mentioned" (citation omitted)). But a diverse spectrum of jurists have denounced blind reliance on this negative-inference maxim. *See, e.g.*, *Jones v. Hendrix*, 599 U.S. 465, 507 (2023) (Jackson, J., dissenting) ("[N]egative inferences drawn without proper context can be notoriously unreliable."); *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 381 (2013) (Thomas, J., for the majority) ("The force of any negative implication, however, depends on context."); *Custis v. United States*, 511 U.S. 485, 501 (1994) (Souter, J., dissenting) ("While often a valuable servant, the maxim that the inclusion of something negatively implies the exclusion of everything else (*expressio unius*, etc.) is a dangerous master to follow in the construction of statutes." (citations and internal quotations omitted)); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012) ("Virtually all the authorities who discuss the negative-implications canon emphasize that it must be applied with great caution, since its application depends so much on context."); *see also State v. Meyers*, 799 N.W.2d 132, 142–46 (Iowa 2011) (disregarding the canon when in conflict with context).

While we recognize negative inferences are sometimes helpful in understanding legislative intent, we find it is not persuasive here considering at least three aspects of the broader statutory scheme accompanying legislative intent. *See State v. Lopez*, 907 N.W.2d 112, 120 (Iowa 2018) ("In interpreting [a]

statute, we also consider the overall structure and context of the statute, not just specific words or phrases in a vacuum.").

First, while Muhr and Mickel are correct that a district court initially has a duty to partition wholly in kind, that duty ends when the court finds great prejudice to the cotenants as a group. Iowa Code § 651.30. Once the court makes that finding, nothing in the section prescribes partition wholly by sale as the only option. Even the section's title: "*Alternatives* to Partition in Kind" implies more than a binary choice for partitioning heirs property. *Id.* (emphasis added); *see id.* § 4.1(38) ("Words and phrases shall be construed according to the context and the approved usage of the language."). And while section 651.32 does not explicitly list what procedures govern a hybrid partition, both of its subsections direct us back to subchapter II on questions of procedure, and section 651.11 offers a procedure for hybrid partitions. *See id.* § 651.32; *see also id.* § 651.11 (noting hybrid partitions may occur "as provided in" subchapter II).

Second, Muhr and Mickel's rigid interpretation of the equitable remedies available under subchapter III would be a significant departure from the long-standing power of Iowa courts to order hybrid partitions when sitting in equity. *Nehls*, 244 N.W. at 851; *Anderson*, 2004 WL 2804854, at *2 ("Equity jurisdiction allows a court the necessary flexibility to determine the equities between the parties."); *see* Iowa Code § 651.11; *see also State ex rel. Weede v. Bechtel*, 56 N.W.2d 173, 191 (Iowa 1952) ("The authority of the court to grant . . . relief to avoid an injustice is inherent in the broad discretionary power of equity."). Such "a major departure from the long tradition of equity practice should not be lightly implied." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982). Muhr and Mickel do

not point to any language in subchapter III or anywhere else that suggests the General Assembly intended to abrogate this longstanding practice. Because "[a] statute will not abrogate an inherent power of the court absent clear legislative intent," and we discern no such clear intent in chapter 651, we find Iowa courts' equitable authority to order hybrid partitions survived the 2018 statutory changes addressing heirs property. *See State v. Hoegh*, 632 N.W.2d 885, 889 (Iowa 2001) (citations omitted); *see also Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15 (1971) (noting "breadth and flexibility are inherent in equitable remedies"); *Iowa Dep't of Soc. Servs. v. Blair*, 294 N.W.2d 567, 570 (Iowa 1980) (noting "a court sitting in equity necessarily has considerable flexibility in framing a remedy").

Third, Muhr and Mickel's interpretation would go against the purpose of subchapter III: to stop family farmers from losing their land by forced judicial sale. *See* Iowa Code § 4.6(1) (directing us to consider "[t]he object sought to be attained" in statutory interpretation). Any opportunity for some family farmers to hold onto land under a hybrid partition better carries out legislative intent than an all-or-nothing scheme that could result in no family members with land after a forced sale. This is reflected in the model act subchapter III was based on, the Uniform Law Commission's Uniform Partition of Heirs Property Act (UPHPA). *See* Unif. Partition of Heirs Prop. Act § 7, 8B U.L.A. 161–63 (2010) (similar cotenant buy-out provision). The uniform drafters explicitly noted that the UPHPA "neither prescribes nor prohibits a partition in kind of part of the heirs property and partition by sale of the remainder." *Id.* § 8 cmt. 1, 8B U.L.A. at 167. This was so despite the UPHPA declaring that "[i]f the court does not order partition in kind . . . the court

shall order partition by sale." *Id.* § 8(b), 8B U.L.A. at 167. That language weighs even more heavily against hybrid partitions than the language deployed by our General Assembly in section 651.32, and yet the uniform drafters felt confident hybrid partitions were still permissible. We independently come to the same conclusion for our statute.

As a fallback to their statutory argument, Muhr and Mickel quote language from one of our court's recent unpublished decisions as persuasive authority for their position:

> [U]nder the revised statute, the court must consider the "great prejudice" factors only when weighing the presumption of partition in kind. So even if [the appellant] could show "great prejudice" from the partition in kind, the court would then order partition by sale.

*Bruhn Farms*, 2022 WL 5078275, at *5 (internal citation omitted). But the parties in that case did not contest the available remedies; the fight was instead over whether the chosen remedy was "equitable and practicable." *Id.* at *6. As a result, any passing phrase that touched on the available remedies was classic dicta. *See In re Marriage of Sokol*, 985 N.W.2d 177, 189 (Iowa 2023) (Mansfield, J., concurring in part and dissenting in part) ("Normally, we don't recognize a new legal principle in a case where the principle isn't relevant—that's pure dictum."). Given the context from which Muhr and Mickel pluck their language, we find the quoted language unpersuasive.

To close this discussion, we find the General Assembly's 2018 legislation did not strip the district court of authority to create a hybrid partition for heirs property. The legislation was intended to protect family farms from forced judicial sale when possible. Removing hybrid partition from the district court's toolbox

does not further that purpose. But the statute requires more than the rules once did, with its condition precedent for partition by sale in whole or in part: a finding of "great prejudice." Iowa Code § 651.30. We now look to whether the record supports finding this condition precedent was satisfied.

### B. "Great Prejudice" in the District Court Ruling

In our view, the district court's great-prejudice analysis went a bit off track but ultimately lands in the right spot by ordering a hybrid partition. *See Gen. Motors Acceptance Corp. v. Keil*, 176 N.W.2d 837, 842 (Iowa 1970) ("Many a learned court is occasionally right for the wrong reason . . . ."). We disavow the portion of the district court ruling that applied the prejudice analysis to the referee's hybrid-partition recommendation *after* rejecting partition in kind. And we put the analysis where the statute requires, to the consideration of whether a partition in kind would "result in great prejudice to the cotenants as a group." Iowa Code § 651.30.

Although the district court's analysis wasn't quite right, we find the court implicitly resolved the "great prejudice" analysis at the right juncture when it accepted the referee's report that a partition wholly in kind would be "completely impracticable" given the land's unique topography and the parties wishes and sentimental attachments to the land. *See id.* §§ 651.30, .31(1)(a), (d) (listing factors for evaluating great prejudice, including whether the land can be "practicably divided" and whether the cotenants have "sentimental attachment" to the land).

Muhr and Mickel's briefing, like the district court ruling, misplaces the analysis, attacking whether the resulting hybrid partition did or did not result in great prejudice. As explained above, the great-prejudice inquiry focuses only on

whether a partition wholly in kind is required. And as our sister panel recognized, this analysis does not apply to the crafting of an ultimate remedy—that challenge turns solely on principles of equity and practicability. *See Bruhn Farms*, 2022 WL 5078275, at *5–6 (rejecting appellant's argument that "[t]hese statutory factors should inform the [c]ourt when crafting an equitable result" (second alteration in original)).

Because application of the statute below engendered such confusion, and the confused briefing is not entirely the fault of the parties, we generously interpret the briefs to address both the proper great-prejudice inquiry and an equitable challenge to the resulting hybrid partition. We consider each in turn.

### 1. The Proper Great-Prejudice Inquiry

In section 651.31, the General Assembly enumerated factors the district court must consider in evaluating whether to proceed with its duty to partition heirs property wholly in kind, or instead whether "great prejudice" warrants some other remedy:

> a. Whether the heirs property can be practicably divided among the cotenants.
> b. Whether a partition in kind will apportion the heirs property in such a way that the aggregate fair market value of the parcels resulting from the division will be materially less than the value of the heirs property if the heirs property is sold as a whole, taking into account the condition under which a court-ordered sale likely will occur.
> c. Evidence of the collective duration of ownership or possession of the heirs property by a cotenant and one or more predecessors in title or predecessors in possession to the cotenant who are or were relatives of the cotenant or each other.
> d. A cotenant's sentimental attachment to the heirs property, including any attachment arising due to the heirs property having ancestral or other unique or special value to the cotenant.

e. The lawful use being made of the heirs property by a cotenant and the degree to which the cotenant will be harmed if the cotenant cannot continue the same use of the heirs property.

f. The degree to which a cotenant has contributed the cotenant's pro rata share of the property taxes, insurance, and other expenses associated with maintaining ownership of the heirs property, or has contributed to the physical improvement, maintenance, or upkeep of the heirs property.

g. Tax consequences.

h. Any other factors the court deems relevant.

The General Assembly further provided, "The court shall weigh the totality of all relevant factors and circumstances and not consider any one factor . . . to be dispositive." *Id.* § 651.31(2).

We find the district court considered these factors, as shown by its express reference to whether the land could be practicably divided and Willenborg's "sentimental attachment." *See* Iowa Code § 651.31(1)(a), (d). Because the district court was in the better position to evaluate credibility, we defer to its acceptance of the referee's report, which spelled out why partition wholly in kind was not practicable. *Id.* § 651.31(1)(a). We also recognize the district court's privileged view of witness testimony, and thus credit its acceptance of Willenborg's sentimental attachment to the land. *Id.* § 651.31(1)(d). We also highlight that the referee's report at least implicitly recognized any attempt to partition wholly in kind would result in less desirable parcels, which could materially harm the aggregate fair market value of the land. *See id.* § 651.31(1)(b). In our view, these factors all tilt in favor of finding great prejudice to the cotenants as a group if the property was partitioned wholly in kind, while the remaining factors are generally neutral. We conclude partition wholly in kind would result in great prejudice.

**2.    Whether the Hybrid Partition Was Equitable and Practicable**

Again consistent with our sister panel's holding in *Bruhn Farms*, we recognize section 651.31's great-prejudice analysis ends once the district court selects a remedy—whether partition in kind, partition by sale, or a hybrid. *See* 2022 WL 5078275, at *5–6. From there, "The only question [remaining] is whether the district court's partition was 'equitable and practicable.'" *Id.* at *6 (quoting Iowa Code § 651.2).

As we've mentioned, the district court accepted the referee's report and credited it. The report concluded it was practicable to divide the property in a hybrid partition and doing so would not "diminish the value of the property." Muhr and Mickel did not provide any evidence of their own at the partition hearing, and they offer us no compelling reason to diverge from the referee's report. And while Muhr and Mickel correctly argue the district court could not divide the property three ways without some prejudice to the group, that finding did not preclude the district court from ordering a hybrid partition, which section 651.11 allowed and which the referee specifically found would be fair to the group as a whole.

Given these findings and the respective wishes of the parties, we affirm the district court's division of the land. Partitioning Willenborg's property interest in kind (with an owelty payment) furthers her sentimental attachment, while partitioning the remainder by sale furthers Muhr and Mickel's financial interest. Equity was done, consistent with the purpose of the statute, as it kept at least some family farmland with the heirs and otherwise treated all cotenants fairly. *See* Iowa Code § 651.2.

### C.    Attorney Fees

Last, Muhr and Mickel request $5000 in appellate attorney fees.  We do not award fees because Muhr and Mickel are "the losing contestant[s]" in this action, as they did not prevail below in obtaining partition by sale or on appeal in disturbing the district court's hybrid partition.  *See* Iowa Code § 651.23(2) (disallowing attorney fees if the plaintiff is the "losing contestant"); *see also Mueggenberg v. Mueggenberg*, No. 21-0887, 2022 WL 2336026, at *6–9 (Iowa Ct. App. June 29, 2022) (analyzing this provision and its departure from previous law in detail).

### IV.    Disposition

We reject each of Muhr and Mickel's arguments and do not award appellate attorney fees.  The district court had the authority to order a hybrid partition under chapter 651 once it concluded a partition wholly in kind would result in great prejudice.  Because we determine the district court's conclusion on great prejudice was correct and the ordered partition was equitable and practicable, we affirm.

**AFFIRMED.**